In re **SUBPOENAS DUCES TECUM TO FULBRIGHT & JAWORSKI and Vinson & Elkins, FS–83–0146, FS–83–0147, FS–83–0148, FS–83–0149.**

**Misc. No. 83–0217.**

United States District Court, District of Columbia.

Sept. 23, 1983.

Order Oct. 18, 1983.

Revised Supplemental Memorandum Oct. 25, 1983.

---

C. Michael Buxton, Robert J. Casey, Vinson & Elkins, Washington, D.C., for Vinson & Elkins.

David R. Johnson, Fulbright & Jaworski, Washington, D.C., for Fulbright & Jaworski.

Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., for intervenor Tesoro.

George D. Billock, Jr., Dunaway, McCarthy & Dye, P.C., Washington, D.C., Paul R. Rosen, Jack A. Meyerson, Daniel J. Dugan, Spector, Cohen, Gadon & Rosen, P.C., Philadelphia, Pa., for plaintiffs.

MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs have come to this Court pursuant to Rule 45(d)(1) of the Federal Rules of

Civil Procedure seeking enforcement of discovery subpoenas served on April 1, 1983. The subpoenas were issued by the federal district court in the Western District of Texas, where the case underlying this request is pending. Plaintiffs are attempting to obtain copies of documents furnished by the respondent law firms to the Securities and Exchange Commission (SEC) and to a Grand Jury convened in this district. The copies are currently in the possession of the respondent firms in the District of Columbia.

The underlying complaints were originally filed in Pennsylvania and the cases were transferred to Texas. One is a class action brought against Tesoro Petroleum Corp. and its officers and directors on behalf of holders of Tesoro stock. The other is a derivative action brought in the name of Tesoro against its officers and directors. The complaints in both suits allege that the defendants manipulated Tesoro stock during 1982 in order to remove enough stock from the public market to convert Tesoro from a public corporation into a private one. According to the complaints, this conversion was partly motivated by management's desire to free the corporation from public disclosure obligations that might reveal allegedly illegal payments made by or on behalf of Tesoro to certain foreign officials before 1978. The District Court in Texas has denied defendants' motions to dismiss the complaints. Therefore, this Court must address the pending motions on the assumption that the allegations in the complaints frame issues with respect to which plaintiffs are entitled to a trial. One such issue is framed by the allegation that Tesoro made illegal payments to foreign officials.

The documents sought by the subpoenas are the product of an investigation by the two law firms into Tesoro's alleged illegal payments to foreign officials. The investigation was undertaken as part of the SEC's "voluntary disclosure program," which promises wrongdoers more lenient treatment and the chance to avoid formal investigation and litigation in return for thorough self-investigation and complete disclosure of the results to the SEC. The final report that resulted from respondents' investigation, along with lawyers' notes and Tesoro corporate records thought pertinent to the report, were made available to the SEC. The lawyers' letter transmitting the documents to the SEC stated that the submission was "*in confidence* .... [It] does not constitute a waiver of any privilege against disclosure ...."[1] The SEC did not confirm this assertion. After the Commission received the documents, it filed a civil complaint against Tesoro which was resolved by a consent decree. In addition, the Commission referred some aspects of Tesoro's foreign payments problem to the Department of Justice, which in turn presented the matter to a Grand Jury convened in this district. That Grand Jury obtained copies of the same documents through subpoenas served on the law firms.

The documents furnished to the SEC, the Grand Jury, and now sought by the plaintiffs consist essentially of the report prepared by the lawyers summarizing their investigation of the foreign payments allegations, Tesoro documents reviewed by the lawyers, and notes of the lawyers' interviews of Tesoro employees and others—all of which are in the hands of the SEC and the Grand Jury. *See* Transcript of hearing on motion to compel, at 5, 21.

Plaintiffs have not sought access to the SEC's copy of the documents. The record indicates, however, that an individual did request the documents from the SEC under the Freedom of Information Act. The SEC was of the view that the documents were exempt from disclosure because the SEC's set of documents was compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7)(A) (1976). It therefore denied the request. *See* Joint Statement in Opposition to Plaintiffs' Motion to Compel, app. 6 (letters between Martin Grey and Edward A. Wilson, FOIA Officer for SEC (Dec. 2, 1982 & Dec. 22, 1982)).

---

1. Joint Statement in Opposition to Plaintiffs' Motion to Compel, app. 4 (Aug. 4, 1983) (letter from Fulbright & Jaworski to Securities & Exchange Commission (Sept. 18, 1978)).

Respondents resist the subpoenas on several theories. They contend that the documents in question are not "relevant" within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure, that the documents are privileged communications between attorney and client, and that the documents are nondiscoverable work product of the lawyers. In the alternative, respondents urge the Court to defer production of the documents until later in the proceedings because the documents are sensitive and, as events unfold, may never be needed.

Plaintiffs traverse each of these contentions and affirmatively contend that whatever privileges may have attached to the documents when they were first prepared by the lawyers, their delivery to the SEC and the Grand Jury waived and fatally fractured those privileges.

■ The defense of irrelevance can be quickly dismissed. The trier of fact may ultimately find, as respondents contend, that there is no causal relationship between the alleged manipulation of stock prices in 1982 and the alleged illegal foreign payments in the 1970's. But the complaint asserts a relationship between the two, an assertion that has survived respondents' motion to dismiss. Thus, a discovery request aimed at documents concerning foreign payments is "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1).[2]

■ Respondents' invocation of the attorney-client privilege to fend off plaintiffs' subpoenas must also fail. The attorney-client privilege is designed to encourage frank discussions between lawyer and client. Our Court of Appeals has ruled, however, that this privilege is lost when the

client makes *any* communication between himself and his attorney known to a third party. "Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege." *Permian Corp. v. United States,* 665 F.2d 1214, 1219 (D.C.Cir. 1981) (quoting *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980)). Here, disclosure to the SEC was voluntary: it was made without the compulsion of an SEC subpoena, investigation demand, or any other process. In fact, it was motivated by self-interest, that is, by the hope that the disclosures would persuade the SEC that there was no occasion for any investigation or enforcement action.[3] Nor can respondents claim that the privilege was induced by an agency's promise of confidentiality. *Cf. Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963) (executive privilege recognized for disclosures made in Air Force accident investigation in reliance on a promise of confidentiality.) The lawyers' self-serving declaration about confidentiality was not accepted by the SEC, so far as this record reveals. It is also noteworthy that the SEC has not appeared here, or apparently in any other similar case, to claim that disclosures such as sought here would disrupt its voluntary disclosure program. Finally, this Circuit has clearly rejected the argument, advanced by respondents, that an exception to the waiver rule should be recognized to promote voluntary cooperation with government investigations. *Compare Permian Corp. v. United States,* 665 F.2d at 1220–21, *with Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 611 (8th Cir.1978) (en banc).

---

**2.** There is a serious discrepancy between respondents' description of the issues framed by the complaints and the plain language of the complaints. *Compare* Joint Statement in Opposition to Plaintiffs' Motion to Compel, at 6–8, *with id.* apps. 1, 2 (complaints). Parties to an ancillary proceeding such as this before a court which does not have a full record or familiarity with an ongoing record should take special care to be candid with the ancillary court. Respon-

dents' choice of advocacy over care is disappointing. Fortunately, a copy of the complaints were furnished as an appendix to respondents' brief.

**3.** Despite the disclosure, the SEC took enforcement action and has invited the Department of Justice to investigate the matters in a criminal context.

■ Once the attorney-client privilege was waived through disclosure to the SEC, respondents' later response to the Grand Jury subpoena had no legal consequence. Any claim that the Grand Jury transaction somehow reversed the SEC disclosure and "put the genie back into the bottle" is untenable. Plaintiffs have assured the Court that all the documents furnished to the Grand Jury were previously disclosed to the SEC. Transcript of hearing at 21. Nor do plaintiffs request the documents in the form in which they were submitted to the Grand Jury. Transcript of hearing at 19–20. Therefore, the fact that these documents were submitted to the Grand Jury is irrelevant.

■ Additional facts establish that respondents have also waived their claim of privilege for work product by disclosing the documents to the SEC. The documents did not remain in the bosom of the lawyers who organized them; the documents were submitted to the SEC *in toto*. There is no basis for a claim that they were meant only for the "eyes" of the author. *In re Sealed Case*, 676 F.2d 793, 811 (D.C.Cir.1982). These documents were not produced to anyone with "common interests in developing legal theories and analyses of documents." *United States v. AT & T*, 642 F.2d at 1300. Rather, respondents made something in the nature of "testimonial use" of the documents when they submitted them to the SEC. *See United States v. Nobles*, 422 U.S. 225, 239 & n. 14, 95 S.Ct. 2160, 2170 & n. 14, 45 L.Ed.2d 141 (1975). Thus, respondents have not merely shared their work product with others engaged in a mutual defense or submitted the documents for a discrete purpose to an adversary; instead, they have used the documents in an effort to persuade the adversary not to pursue legal claims. Such a disclosure cannot be reconciled with the policy objective of the work-product privilege: promoting the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent. *United States v. AT & T*, 642 F.2d at 1299. This kind of use of work product—a use that is inconsistent with the purpose of the privilege—effected

a waiver. *Compare In re Sealed Case*, 676 F.2d at 818.

The situation here is quite different from that in *Permian*, where the district court honored work-product claims with respect to some documents and the Court of Appeals affirmed. *Permian Corp. v. United States*, No. 79–2098, at 17 (D.D.C.1980), aff'd in part, rev'd in part, 665 F.2d 1214 (D.C.Cir.1981). There the documents for which privilege was claimed were first produced in a private litigation, where their confidentiality was protected by a stipulation reinforced by a judicial protective order. Thereafter the plaintiff sought approval from the SEC for a registration statement. It was in plaintiff's interest to allow the SEC to review the privileged documents to facilitate that approval. This plaintiff did, but only after the SEC had agreed not to deliver the documents to any third party for a reasonable period after notice to plaintiffs. It was on the basis of these findings that the district court honored the defendants' work product claim and rejected the government's contention that there had been a waiver. There is no similar basis in the present case to reject the assertion of waiver. Respondents here obtained no stipulation from the SEC or court order that the documents would not be disclosed. Respondents' unilateral declaration of confidentiality does not bring them within the ambit of the *Permian* precedent. In addition, in the present enforcement case the SEC is in much more of an adversary stance in its threatened investigation of respondents than it assumed in *Permian* in approving registration statements.

The work product case law beginning with *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), counsels courts to be tender about disclosure of work product and to guard against more disclosure than is necessary for the purpose of the particular case. Respondents invoke the spirit of these cases to urge that the allegedly sensitive documents here at issue remain under wraps until discovery and the entire pretrial process has progressed fur-

ther. There may be merit to the respondents' request. However, if respondents had wished to establish priorities for discovery, they should have specifically asked the Texas trial court to do that. The trial court, not this Court, has the necessary perspective about the litigation to make the judgment which respondents seek. And that judgment will best be reached with the aid of plaintiffs' counsel informed by access to the documents. Accordingly, the accompanying Order will enforce the subpoenas, but will protect against use of the documents by anyone but plaintiffs' lawyers involved in this litigation and their clerical personnel whose services are necessary for the purpose, unless and until otherwise ordered by the Texas court.

### ORDER

For the reasons set forth in the accompanying Memorandum, it is this 23d day of September, 1983 hereby

ORDERED: that plaintiffs' motion to compel compliance with subpoenas issued to Fulbright & Jaworski and Vinson & Elkins is granted; and it is further

ORDERED: that the documents provided to plaintiffs subject to this Order shall be deemed "Confidential Matter" as that term is used in the Protective Order No. 1 issued by the United States District Court for the Western District of Texas in the litigation underlying this case (W.D.Tex. SA–82–CA–824, SA–82–CA–825). Those documents shall be subject to the rules set forth in that order unless otherwise ordered by the Texas court.

* By letter dated October 19, 1983, respondents have brought to the Court's attention a detail which was not apparent from the documents furnished by the parties when the Court entered its earlier orders. Respondents attached to their recent letter a copy of one of the subpoenas at issue here which differs from the copies filed by plaintiffs when they moved for enforcement. The copies of the subpoenas filed originally by plaintiffs were attached to copies of the notices of deposition which carried the caption of the United States District Court for the Western District of Texas and certified by its Clerk. The copies of the subpoenas attached to these certified notices were on a printed form, but were not signed. The

### ORDER

Upon consideration of Respondents' Motions For Reconsideration and Stay and plaintiffs' opposition to them,

And it appearing that the motions are without merit, it is hereby

ORDERED that motions be denied. It is

FURTHER ORDERED that respondents shall produce the documents responsive to the subpoenas *duces tecum* within 10 days of the entry of this Order.

Entered this 18th day of October, 1983.

### REVISED SUPPLEMENTAL MEMORANDUM *

On September 23, 1983, this Motions Court entered an order enforcing subpoenas *duces tecum* issued in two private civil actions pending in the United States District Court for the Western District of Texas: *Bolton v. Tesoro Petroleum Corp.,* SA–82–CA–824, and *Bolton v. West,* SA–82–CA–825. On October 3, 1983, respondents moved for reconsideration of that Order.

The subpoenas were issued by the Clerk of this Court on April 1, 1983, pursuant to notices of deposition and supporting document requests filed in the Texas Court on March 25, 1983, and certified by the Clerk of that court. The subpoenas commanded respondents, two law firms with offices in the District of Columbia, to produce the subpoenaed documents on April 11, 1983. When the firms failed to honor the subpoenas, plaintiffs sought enforcement. In opposing the motion, respondents filed a 64-

Court inferred that the same clerk who had certified the notices also signed the originals of the subpoenas. The copy of the subpoena attached to respondents' October 19 letter shows, however, that the subpoena was signed by a deputy clerk of this Court after he received the deposition certified by the Clerk of the Texas Court. Hence the Supplemental Memorandum filed October 18 is withdrawn (although still on file with the Clerk) and replaced by the accompanying Revised Supplemental Memorandum which takes into account the corrected details about the notices and the subpoenas. The Order entered October 18, 1983, remains in force, and respondents have noted an appeal from it.

page memorandum supported by a voluminous packet of exhibits. One exhibit dated September 18, 1978, signed by and on behalf of one of the law firms, purported to submit the enclosed documents to the SEC "*in confidence* at your request in connection with your formal investigation." (Emphasis in original.) The Memorandum did not mention, and the exhibits did not include, any SEC response to the reference to submission of the documents in confidence.

At a September 9 hearing on the motion to compel, respondents' counsel offered to supplement the unilateral letter with an affidavit that

> Tesoro's counsel in connection with the S.E.C. investigation, which was ... settled by consent decree, was advised by the S.E.C. that the S.E.C. would not release any of the documents provided to it by Tesoro to any third party who requested them.

Tr. at 29. The Court invited counsel to put the representation in the record by some kind of a notice of filing (instead of an affidavit). *Id.*

Thereafter, this Motions Court (whose term ended September 30) proceeded with reasonable expedition to rule on the motion. By September 23, when the Court was ready to file its ruling on the motion, it had received no letter or notice of filing about the SEC's acquiescence in the request for confidentiality such as proffered by respondent's counsel on September 9, 1983.[1] Accordingly, the September 23 ruling recited that:

> The lawyers' letter transmitting the documents to the SEC stated that the submission was "*in confidence* .... [It] does not constitute a waiver of any privilege against disclosure ....". The SEC did not confirm this assertion.

Memorandum filed September 23, 1983 at 584 (footnote omitted).

The Memorandum concluded that the respondents had waived any attorney-client privilege and any work-product privilege. The ruling that the client had waived the attorney-client privilege was based, in part, on a finding that:

> The lawyers' self-serving declaration about confidentiality was not accepted by the SEC, *so far as this record reveals.*

*Id.* at 585 (emphasis added). The Court also rejected the claim of attorney-client privilege on the authority of decisions in this Circuit that any voluntary disclosure of any communications between an attorney and his client waives the privilege. *Id.* at 585.

Similarly, the Court rejected the work-product privilege. The then record showed that the lawyers here, unlike the parties in *Permian Corp. v. United States*, 665 F.2d 1214 (D.C.Cir.1981), "obtained no stipulation from the SEC or court order that the documents would not be disclosed." Memorandum at 586. Accordingly, the Court ruled that "[r]espondents' unilateral declaration of confidentiality does not bring them within the ambit of the *Permian* precedent." *Id.*

But that was neither the only nor indeed the primary ground of the Court's work-product opinion. That decision was stated in the Memorandum on page 586 as follows:

> [R]espondents made something in the nature of "testimonial use" of the documents when they submitted them to the SEC. *See United States v. Nobles*, 422 U.S. 225, 239 & n. 14, 95 S.Ct. 2160, 2170 & n. 14, 45 L.Ed.2d 141 (1975). Thus, respondents have not merely shared their work product with others engaged in a mutual defense or submitted the documents for a discrete purpose to an adversary; instead, they have used the documents in an effort to persuade the adversary not to pursue legal claims. Such a

---

1. In contrast, respondents did address two other points raised during the argument in the time before the opinion was issued. In a letter dated September 16, 1983, respondents provided the Court with copies of briefs filed in *Permian Corp. v. United States*, 665 F.2d 1214 (D.C.Cir.1981) (*cf.* tr. at 50), with the district court opinion in that case, and with the protective order currently in force in the underlying lawsuits in the Western District of Texas (*cf.* tr. at 49).

disclosure cannot be reconciled with the policy objective of the work-product privilege: promoting the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent. *United States v. AT & T,* 642 F.2d at 1299. This kind of use of work product—a use that is inconsistent with the purpose of the privilege—effected a waiver. *Compare In re Sealed Case,* 676 F.2d at 818.

Respondents base their motion for reconsideration on the ground that the Court's "key factual assumption is not correct, for the SEC *did* contemporaneously agree to maintain the confidentiality of the requested materials ...." Joint Statement in Support of Motion for Reconsideration at 2 (filed Oct. 3, 1983). This motion for reconsideration was supported by two letters. The first one, from Fulbright & Jaworski to the SEC, dated October 3, 1978, set out respondents' understanding of the terms on which they had provided the documents in question to the SEC, including terms governing disclosure of the documents to third parties. The second letter, from the SEC to a Fulbright & Jaworski lawyer, dated October 19, 1978, presented the SEC's understanding of those terms.

As stated, neither letter was mentioned in the voluminous 64-page memorandum filed in opposition to the motion to compel. They were not included in the exhibits there appended. Nor were they even mentioned in the September 9 hearing.[2] Moreover, the SEC letter does not confirm the representation made in open court that the SEC "would not release any of the documents ... to any third party." One paragraph of the SEC letter referred to the Commission investigation as private and stated that:

> the Commission staff will maintain the confidentiality of any documents produced pursuant to any *subpoena* issued to your firm or to Tesoro, ... as it does in connection with any other private investigation. (Emphasis added.)

The fact is, of course, that these documents were not produced to the SEC pursuant to any subpoena; they were produced by respondents voluntarily to serve and advocate their clients' interest in attempting to persuade the SEC to refrain from an investigation that might culminate in a criminal prosecution and civil enforcement proceedings.

The next paragraph said that:

> In the event that, during the period of investigation and thereafter, the Commission shall receive a *request from any third party other than a grand jury or agencies of the federal government* for access to any document submitted by your firm or Tesoro, voluntarily or pursuant to subpoena, ... the staff of the Commission will notify Tesoro of the receipt of such a request.... In the further event that the Commission should determine that it is not able to grant confidential treatment consistent with the provisions of the Freedom of Information Act, the staff will immediately advise Tesoro of such decision and endeavor to afford you ten days notice prior to the release of such documents ....

(Emphasis added.) Obviously, the SEC did not agree that it "would not release any of the documents ... to any third party." It is also noteworthy that the subpoena here at issue is not a mere "request from any third party." The subpoena is a "command" by authority of a United States District Court, pursuant to a notice of deposition and an ancillary documents request certified to it by the Clerk of the Texas Court. It much more nearly resembles a demand emanating from a grand jury or from "agencies of the federal government," which the SEC excepted from the category of "requests" about which it would agree to notify Tesoro.

---

2. Respondents' only representation at argument was that they had been "advised" by the SEC that the SEC would not release the documents to any third party. Tr. at 29. Respondents made no reference to the SEC letter nor made any other offer of proof except for the notice of filing referred to *supra* p. 2.

Finally, in *Permian,* where the work-product privilege was upheld, the documents in question were additionally subject to a Protective Order issued by the United States District Court for the Southern District of Ohio which:

expressly directed that no such confidential information would be submitted by either party to any state or federal regulatory agency unless the producing party was provided 48 hours notice, giving that party an opportunity to file objections in court and requiring the requesting party to move for permission to make the submission.

*Permian Corp. v. United States,* No. 79–2098, slip op. at 5 (D.D.C. May 15, 1980). There is no such judicial order here.

Since respondents did not produce the documents pursuant to subpoena, they do not enjoy the confidentiality accorded by the SEC to documents subpoenaed in a private investigation. Since the civil subpoenas at issue here are not requests from a third party (such as the SEC might receive pursuant to the Freedom of Information Act), they are not embraced in the SEC commitment even to notify respondents before surrendering the documents. Indeed, any notice commitment would be redundant here. Respondents were directly notified about the subpoenas; they were served on them by plaintiffs. *A fortiori,* there has been no commitment by the SEC to receive and hold the documents in confidence on terms which negate the waiver of respondents' work product privilege effected in 1978 when they submitted the documents to the SEC.

On reflection, the Court is persuaded that the order it entered on September 23 enforcing the subpoenas was required by law. Even assuming, without deciding, that the SEC had given the assurance of confidentiality that counsel represented in the September 9 hearing, counsel's submission of these documents in an attempt to dissuade the SEC from taking adversary action waived the work-product privilege. An SEC assurance not to release documents to a third party who "requested" them would not negate a waiver created by the act of delivery to the SEC in the circumstances here.

In view of the foregoing, the Order of October 18 denied the motion for reconsideration.

There was also an application for a stay until discovery had been further developed in other respects. The application did not take into consideration the protective order provided for in the September 23 Order. There is no equity in further delaying production of these documents to plaintiffs' counsel pursuant to such a protective order. The original deposition notice was filed in Texas on March 25, 1983. The subpoenas were originally returnable on April 11, 1983. There has been ample time for respondents and their clients to move in Texas to quash the underlying deposition notice or obtain other relief from the Court primarily responsible for this case and most knowledgeable about it. There are important values in the prompt, crisp enforcement of subpoenas and in discouraging delaying tactics by which justice can often be denied. Nor is there any apparent public interest in suppression of these documents. The public interest could be most authoritatively defined by the SEC. The SEC is silent. Accordingly, the Order denied the application for a stay pending further development of discovery.[3]

---

**3.** The respondents have appealed the underlying enforcement order and have applied for a stay pending appeal. That application remains under advisement pending a response by plaintiff.