**In re SUBPOENAS DUCES TECUM.**

**Fulbright & Jaworski, Vinson & Elkins, Tesoro Petroleum Corporation, Appellants.**

No. 83–2116.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 29, 1984.

Decided July 10, 1984.

C. Michael Buxton, Washington, D.C., with whom Robert J. Casey, Washington, D.C., for Vinson & Elkins, Keith A. Jones and David R. Johnson, Washington, D.C., for Fulbright & Jaworski, and Steven B. Rosenfeld, New York City, for Tesoro Petroleum Corp., were on the joint brief, for appellants.

Daniel J. Dugan, with whom George Billock, Jr., Pittsburgh, Pa., was on the brief, for appellees.

Before WALD, MIKVA and DAVIS,[*] Circuit Judges.

Opinion for the Court filed by Circuit Judge DAVIS.

DAVIS, Circuit Judge:

Appellants challenge orders of the District Court,[1] 99 F.R.D. 582, granting appellees' motion to compel compliance with four subpoenas *duces tecum* on the grounds that the attorney-client and work product privileges had been waived by prior disclosure. We affirm.

## I

Appellees, movants below, are seeking copies of documents which have been furnished by appellants, respondents below, to the Securities and Exchange Commission (SEC or Commission) and to a grand jury. The demand for those documents arose out of complaints filed by appellees as plaintiffs in Pennsylvania and transferred to the U.S. District Court for the Western District of Texas which involve (1) a class action brought against Tesoro Petroleum Corporation (Tesoro) and its officers and directors on behalf of Tesoro stockholders, and (2) a derivative action brought in Tesoro's name against its officers and directors. Plaintiffs[2] allege in those complaints that

defendants manipulated Tesoro stock in 1982 in order to remove enough stock from the public market to convert Tesoro from a public into a private corporation. The claim is that this contemplated corporate change was in part motivated by a desire to become free from public disclosure obligations, which obligations in turn might have caused disclosure of involvement by Tesoro in illegal payments to foreign officials before 1978. In the course of that Texas litigation, plaintiffs sought the papers now in question for use in connection with those suits. Because the documents are now in the possession, within the District of Columbia, of two law firms, Fulbright & Jaworski (Fulbright) and Vinson & Elkins (Vinson), subpoenas *duces tecum* were issued to those firms by the Clerk of the District Court, and, on their refusal to produce, a proceeding to enforce the subpoenas against them was begun in the court below.[3]

Although neither law firm is a party to the law suits in Texas, their involvement here stems from the fact that the subpoenaed documents are the product of an investigation by Fulbright into Tesoro's alleged illegal payments to foreign officials. This came about as follows: After indications of improper corporate payments to officials, domestic and foreign, had become more frequent in the 1970's, the SEC established a "voluntary disclosure program," including independent investigations by the affected companies, and the agency made a general request to those companies to participate in the program. *In re Sealed Case*, 676 F.2d 793, 800–01 (D.C.Cir.1982). Following such a request to Tesoro, it hired Fulbright to perform a self-investigation on that subject and to help set up a special committee of independent directors to over-

[*] Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

[1] The orders were entered by District Judge Oberdorfer on September 23 and October 18, 1983 in District Court Misc. No. 83–0217.

[2] Plaintiff-appellees are Robert J. Bolton, George E. Meyer and Leo A. Walker, III, individually and on behalf of all persons similarly situated, and Robert J. Bolton derivatively on behalf of Tesoro.

[3] Tesoro intervened after appellees moved to compel compliance with the subpoenas.

see it.[4] Tesoro disclosed the results of the investigation to the SEC under the "voluntary disclosure program." As stated by the District Court below, that program "promises wrongdoers more lenient treatment and the chance to avoid formal investigation and litigation in return for thorough self-investigation and complete disclosure of the results to the SEC." *See also Sealed Case, supra,* 676 F.2d at 801.

Made available to the SEC, under that program, were a copy of the investigation's final report and several binders which contained pertinent corporate records and documents of Tesoro, as well as the notes of the lawyers taken during the course of their investigation. The SEC filed a civil complaint against Tesoro, following the agency's receipt and consideration of the documents, which was resolved by entry of a consent decree. The Commission also referred some aspects of Tesoro's circumstances to the Department of Justice, which then presented the matter to a grand jury, convened in October 1978 in the District of Columbia.[5] Vinson represented Tesoro before the grand jury, and also is Tesoro's counsel in the Texas litigation. The grand jury obtained copies of the same documents through subpoenas served on the law firms.

After a hearing on the motion, the District Court ordered compliance, rejecting appellants' attorney-client and work product arguments. By Supplemental Memorandum and Order, the court denied appellants' motion for reconsideration, and confirmed its prior decision. A Revised Supplemental Memorandum corrected a reference to the clerk that issued the subpoenas. A motion for a stay pending appeal was subsequently granted by the court below.[6]

## II

The questions before us are whether the District Court correctly determined that ap-

pellants' voluntary disclosure of the documents to the SEC effected waivers of attorney-client and work product privileges with respect to the documents now sought for discovery in the Texas suits. We deal with each privilege in turn.

### A. *Attorney-Client Privilege*

 Attorney-client communications ordinarily are privileged, and thus are protected from discovery by a party opponent under Fed.R.Civ.P. 26(b). By allowing confidentiality of the substance of client and lawyer discussions, the privilege is held by clients as a means of encouraging their candor in discussing their circumstances with their chosen legal representatives. *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege, however, is not absolute. As stated by this court in *Permian Corp. v. United States,* 665 F.2d 1214, 1219 (D.C. Cir.1981) (quoting *United States v. American Telephone & Telegraph,* 642 F.2d 1285, 1299 (D.C.Cir.1980)), "[a]ny voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege." *See also Sealed Case, supra,* 676 F.2d at 818; *see generally* 8 J. Wigmore, Evidence §§ 2327–28 (McNaughton rev. 1961); McCormack on Evidence § 93 (Cleary ed. 1972). There was, of course, disclosure here but appellants maintain that, although Tesoro's disclosure to the SEC was voluntary, their waiver of the attorney-client privilege with respect to those disclosures was limited to the SEC. They contend that *Permian* is compatible with a theory which allows a "limited waiver" of the attorney-client privilege (excluding disclosures to government agencies) and cite authority from other courts supporting the correctness of that rule. *See, e.g., Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1977). We disagree, and hold that

---

**4.** The special committee later retained Vinson to advise it with regard to certain legal matters arising in conjunction with the investigation.

**5.** We were informed by letter prior to oral argument that the grand jury investigation had been

concluded with a decision not to seek a criminal prosecution.

**6.** Appellants are Tesoro and the two law firms.

the District Court correctly interpreted and applied this court's precedent.

Contrary to appellants' assertion, the waiver theory explicated by the court in *Permian* is not limited to circumstances in which material that has been disclosed to one federal agency is sought by another federal agency. In *Permian,* Occidental Petroleum Corporation (Occidental) had allowed the SEC access to certain documents pursuant to an agreement by which Occidental attempted to retain its privileges. When the Department of Energy later sought access to some of the privileged materials, Occidental claimed that several of the documents were protected by the attorney-client privilege and that the prior disclosure to the SEC was a limited waiver of the privilege, *i.e.,* it was a waiver with respect to the SEC alone.

Rejecting the limited waiver argument, this court stated: "we are aware of no congressional directive or judicially recognized priority system that places a higher value on cooperation with the SEC than on cooperation with other regulatory agencies, including the Department of Energy," *Permian,* 665 F.2d at 1221. Appellants use this quotation to urge that the *Permian* court rejected the limited waiver theory only as between federal agencies. However, such a narrow reading of that case is an incorrect characterization of its reasoning and holding. There is no need to elaborate on this court's emphatic rejection of the limited waiver doctrine in a lengthy discussion in *Permian, see* 665 F.2d 1220–1222, in which the court stated that

> The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidential-

ity he has already compromised for his own benefit .... The attorney-client privilege is not designed for such tactical employment.

665 F.2d at 1221.

There is no meaningful distinction in the adventitious fact that only federal agencies were involved in *Permian.* For the purposes of the attorney-client privilege, there is nothing special about another federal agency in the role of potential adversary as compared to private party litigants acting as adversaries. Like Occidental in *Permian,* Tesoro willingly sacrificed its attorney-client confidentiality by voluntarily disclosing material in an effort to convince another entity, the SEC, that a formal investigation or enforcement action was not warranted. Having done so, appellants cannot now selectively assert protection of those same documents under the attorney-client privilege. A client cannot waive that privilege in circumstances where disclosure might be beneficial while maintaining it in other circumstances where nondisclosure would be beneficial. "We believe that the attorney-client privilege should be available only at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality". *Permian,* 665 F.2d at 1222. To the same effect, *see United States v. American Telephone & Telegraph,* 642 F.2d 1285, 1299 (D.C.Cir. 1980). Having failed to maintain genuine confidentiality, appellants are precluded from properly relying on the attorney-client privilege.

**B. *Work Product Privilege***

The harder question concerns appellants' claim that the District Court erred in concluding that the disclosure effected an implied waiver of their work product privilege.[7]

---

7. Fed.R.Civ.P. 26(b)(3) provides:
 (3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that

 other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering dis-

■ While the attorney-client privilege is intended to promote communication between attorney and client by protecting client confidences, the work product privilege is a broader protection, designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's general interest in revealing all true and material facts relevant to the resolution of a dispute. *See Hickman v. Taylor,* 329 U.S. 495, 509–512, 67 S.Ct. 385, 392–394, 91 L.Ed. 451 (1947); *see generally* Cohn, *The Work-Product Doctrine: Protection, Not Privilege,* 71 Georgetown L.Rev. 917 (1983). As this court stated in *United States v. American Telephone & Telegraph,* 642 F.2d 1285, 1299 (D.C.Cir.1980), *"the work product privilege* does not exist to protect a confidential relationship, but rather *to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent....* A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." (Emphasis in original.)

■ Recently this court decided a work product case which called upon the court to discuss the legal considerations underlying waiver of that privilege in the context of the SEC's voluntary disclosure program, *In re Sealed Case,* 676 F.2d 793 (D.C.Cir. 1982). *Sealed Case* involved resistance to a grand jury subpoena by a multinational corporation on work product grounds (among others) for its counsel's records which had been disclosed previously to the SEC in the voluntary disclosure program. This court affirmed the district court's determination that the corporation had waived its work product privilege:

Company entered into an arrangement with the SEC under which, as a matter of both common sense and common knowledge, Company relinquished its right to prevent the government from examining whatever documents were necessary for a fair evaluation of the final report offered to its shareholders and the SEC. Just because Company was successful in hiding crucial documents from the SEC, we need not allow Company to withhold them from a grand jury investigating possible crimes uncovered during the SEC's investigation.

*Sealed Case,* 676 F.2d at 817.

Although the circumstances before us differ—this is a case involving private parties, not a grand jury investigation, and appellees here are seeking the documents which were disclosed to the SEC, not those which might have been successfully hidden—and though that opinion left open the precise case before us,[8] the general reasoning of *Sealed Case* leads us to a similar conclusion here. As Judge Wright stated, "[t]he doctrine of implied waiver allows courts to retain some discretion to ensure that specific assertions of privilege are reasonably consistent with the purposes for which a privilege was created," 676 F.2d at 817, and "[t]he question with respect to implied waiver is whether Wigmore's 'objective consideration' of fairness negates [the] assertion of privilege." *Ibid.*[9] *See also id.* at 818. Obviously, the application of such a "fairness" standard is not without difficulty. However, because the underlying rationale of the work product privilege itself is also one of fairness, an analysis of whether that rationale maintains viability in particular circumstances involves of necessity the weighing of more abstract considerations within the context of those particulars.

covery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**8.** "We do not consider whether we would imply a waiver in other types of litigation for all of

Company's privileged files relating to the report." 676 F.2d at 817.

**9.** Wigmore stated that "Regard must be had ... in every waiver ... [to] the element of fairness and consistency." 8 J. Wigmore, *Evidence* § 2327 at 636 (J. McNaughton rev. 1961)).

Our present decision that there has been a waiver of the privilege rests on three main factors: (1) "the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege," *Sealed Case*, 676 F.2d at 818; (2) appellants had no reasonable basis for believing that the disclosed materials would be kept confidential by the SEC; and (3) waiver of the privilege in these circumstances would not trench on any policy elements now inherent in this privilege. First, the advantage that the appellants seek from their attempt selectively to disclose their work product is greater "than the law must provide to maintain a healthy adversary system." *Id.* Fairness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure of work product to one adversary—the SEC—while being able to maintain another advantage inherent in protecting that same work product from other adversaries. *See Sealed Case*, 676 F.2d at 818–821. We are convinced that the health of the adversary system—which spawned the need for protection of an attorney's work product from discovery by an opponent—would not be well served by allowing appellants the advantages of selective disclosure to particular adversaries, a differential disclosure often spurred by considerations of self-interest.[10] "When a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality for all files necessary to a full evaluation of its disclosures. It foregoes some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes, especially disputes with such formidable adversaries as the SEC." *Sealed Case*, 676 F.2d at 822–23 (footnote omitted).

There is no question that the SEC was an adversary to Tesoro. This was not a partnership between allies. Tesoro was not simply assisting the SEC in doing its job.

Rather, Tesoro independently and voluntarily chose to participate in a thorough disclosure program, in return for which it received the *quid pro quo* of lenient punishment for any wrongdoings exposed in the process. That decision was obviously motivated by self-interest. Appellants now want work product protection for those same disclosures against different adversaries in suits centering on the very same matters disclosed to the SEC. It would be unreasonable to suppose that litigation with these other adversaries was not anticipated at the time of disclosure to the SEC. It would also be inconsistent and unfair to allow appellants to select according to their own self-interest to which adversaries they will allow access to the materials.

Second, appellants did not have any proper expectations of confidentiality which might mitigate the weight against them of such general considerations of fairness in the adversary process. Although we agree with appellants that not all voluntary disclosures effect a work product waiver, there is not here any "existence of common interests between transferor and transferee," *United States v. AT&T*, 642 F.2d 1285, 1299 (1980), which might establish a basis for expectations of confidentiality. Appellants contend, however, that such expectations were warranted because the materials were disclosed to the Commission pursuant to (1) SEC regulations which required their confidentiality and, (2) an understanding between Fulbright and the SEC that the materials would remain confidential.

There is a dispute between the parties whether the question of SEC regulations said to require confidentiality was raised below by appellants. We put aside this question because the regulations cited by appellants are not relevant to the circumstances before us. *See* 17 C.F.R. §§ 203.2, 230.122, 240.0–4 (1978). These regulations apply to formal SEC investigations—they afford no protection to documents previously disclosed under the voluntary disclosure program. Appellants maintain that "dis-

---

**10.** As we show *infra,* the SEC did not promise confidentiality to appellants.

closure" of the materials did not occur until the formal investigation began—and thus the regulations do apply—because the SEC did not have physical possession of the materials until that time. But even before taking physical possession, the SEC unquestionably had full access to all of the documents and perused them. Contrary to appellants' argument, there is no significance to the distinction between full access and physical possession with respect to the issue of when disclosure took place. The materials were disclosed in full to the SEC prior to the institution of a formal investigation, and the regulations do not apply.

Likewise without merit is appellants' claim that the SEC had agreed by letter to maintain the confidentiality of the submitted materials. Appellants were not entirely forthcoming below on this issue. Only after the District Court held against appellants in its first memorandum did they request reconsideration of that decision based on the new submission of correspondence consisting of two letters between Fulbright and the SEC. Appellants maintain that these letters—one dated October 3, 1978 from Fulbright to the SEC and one dated October 19, 1978 from the SEC to Fulbright—demonstrate that the SEC did agree to maintain the confidentiality of the documents in question.

We are not persuaded that the District Court erred in law or fact in its assessment that "there has been no commitment by the SEC to receive and hold the documents in confidence on terms which negate the waiver of [appellants'] work product privilege effected in 1978 when they submitted the documents to the SEC." Responding to Fulbright's October 3 letter, which stated appellants' own understanding concerning disclosure of the documents, the SEC said that "[t]he Commission staff will maintain the confidentiality of any documents produced pursuant to any subpoena issued to your firm or to Tesoro, ... as it does in connection with any other private investigation." As noted by the District Court,

these documents were not "produced pursuant to any subpoena." They were provided voluntarily by Tesoro to persuade the SEC not to engage in a formal investigation of possible wrongdoings. The distinction between voluntary disclosure and disclosure by subpoena is that the latter, being involuntary, lacks the self-interest which motivates the former. As such, there may be less reason to find waiver in circumstances of involuntary disclosure.

With regard to third party access, the SEC stated:

> In the event that, during the period of investigation and thereafter, the Commission shall receive a request from any third party other than a grand jury or agencies of the federal government for access to any document submitted by your firm or Tesoro, voluntarily or pursuant to subpoena, ... the staff of the Commission will notify Tesoro of the receipt of such a request .... In the further event that the Commission should determine that it is not able to grant confidential treatment consistent with the provisions of the Freedom of Information Act, the staff will immediately advise Tesoro of such decision and endeavor to afford you ten days notice prior to the release of such documents
> . . . .

Clearly, the SEC's assurance that Tesoro would be notified in the event of a third party request is hardly an agreement to maintain complete confidentiality. Regardless of Fulbright's attempts to extract such a promise from the SEC, neither these letters nor any other part of the record indicates any such agreement by the SEC. Indeed, the record shows that the exchange of these letters occurred *after* the SEC had already been given access to all of the documents in question. The letters were sent sometime after the beginning of a formal investigation of Tesoro by the SEC, not prior to the initial disclosure of the documents.[11] The record shows no at-

---

11. The newly submitted letters between Tesoro and the SEC were exchanged in October 1978.

The SEC's formal investigation of Tesoro commenced in August 1978. Appellants have also

tempts by appellants to structure a confidentiality agreement prior to making the documents available, much less an agreement to do so by the SEC even after disclosure had been made. *See Sealed Case, supra,* 676 F.2d at 823. In short, the letters exchanged between Fulbright and the SEC warrant no expectations of confidentiality on appellants' part for the materials which were made available. The attempt to secure confidentiality occurred after the SEC had seen the voluntarily disclosed documents, and the SEC's statement concerning third party requests for documents said only that Tesoro would receive notice of any release of materials which would have been deemed appropriate by the Commission.[12]

Appellants offer two other factors to support their expectations of confidentiality, neither of which weighs in their favor: (1) The SEC has not in fact released any of the materials, including to a private party who requested copies of the Tesoro documents under the Freedom of Information Act (FOIA), and (2) the SEC apparently will propose legislation concerning waivers of evidentiary privileges by companies involved with the SEC.

There is no significance to the fact that the SEC has not released any of the materials. The SEC denied an FOIA requestor by asserting exemption 7(A) (5 U.S.C. § 552(b)(7)(A)) because "the production of such records would ... interfere with law enforcement proceedings," *i.e.,* with the then on-going grand jury proceedings. However, since the grand jury proceedings have ended, the SEC has advised a requestor that the exemption will no longer be asserted and that the Commission's FOIA officer will review the Tesoro file to determine whether any material is releasable. This is a slim basis on which to claim an expectation of confidentiality.

Likewise without weight is appellants' contention that confidentiality should be accorded because the SEC has recently announced that it will propose legislation which would "provide that submission of information to the Commission does not waive the attorney-client privilege, or any other applicable evidentiary privilege, and that such information is exempt from the FOIA."[13] This statement by the SEC hardly supports appellants' position. Rather, it seems to indicate a belief by the SEC that, under current law, submission of information to the SEC waives applicable evidentiary privileges and is not exempt from FOIA requests. We note that the SEC has not taken any public position in this case concerning judicial resolution of these problems, nor has it adopted regulations embodying the substance of its suggestion to Congress.

Finally, we believe that no policy factor now inherent in the work product privilege

placed into evidence a copy of a letter, dated September 18, 1978, from Fulbright to the SEC in which confidentiality was claimed for all documents. This letter, too, was sent after the formal investigation was commenced, and the record shows no response from the SEC.

**12.** In *Permian, supra,* 665 F.2d 1214, the District Court upheld claims to work product protection, and we affirmed. Appellants say that that holding supports their position that their voluntary production of documents to the SEC did not effect a waiver of their work product protection. *Permian* was quite different, though it involved production of allegedly privileged documents to the SEC. Those documents had first been produced in private litigation in which both a stipulation between the parties and a judicial protective order stated that inadvertent production of a privileged document would not be deemed a

waiver. The District Court found that work product waiver had not in fact occurred for 36 documents at issue because a special agreement with the SEC established a protective attitude of confidentiality. The question on appeal was the correctness of the District Court's factual findings concerning the agreement with the SEC. That finding was upheld by this court as not clearly erroneous. 665 F.2d at 1218–19. Here, on the other hand, the District Court found no such special agreement, and we agree that its decision was correct on this record.

**13.** Taken from a letter dated February 22, 1984 from John S.R. Shad, SEC Chairman, to the Honorable Timothy E. Wirth, Chairman of the House Energy and Commerce Committee Subcommittee on Telecommunications, Consumer Protection and Finance.

calls for a special exception for the SEC's voluntary disclosure program (or similar governmental enforcement projects). A healthy adversary system affords protection to an attorney's trial preparation as against actual and potential opponents. *United States v. American Telephone & Telegraph, supra,* 642 F.2d at 1299. But, as we have said, the privilege does not protect against the manipulation of selecting a particular opponent for selective disclosure—most probably for the discloser's own benefit. The SEC was such a potential opponent but Tesoro (and the other appellants) voluntarily and deliberately made disclosures to that agency, undoubtedly in the hope and expectation of receiving a benefit under the voluntary disclosure program. It is said that, nevertheless, such voluntary programs will be hindered unless the work product privilege covers disclosures under them. *Permian, supra,* has already rejected, for the attorney-client privilege, an exception for such disclosure, saying "we cannot see how 'the developing procedure of corporations to employ independent outside counsel to investigate and advise them' would be thwarted by telling a corporation that it cannot disclose the resulting reports to the SEC if it wishes to maintain their confidentiality." The same choice is open under the work product privilege. Or the company can insist on a promise of confidentiality before disclosure to the SEC. *Cf. Sealed Case,* 676 F.2d at 823.

If a change is to be made because it is thought that such voluntary disclosure programs are so important that they deserve special treatment, that is a policy matter for the Congress, or perhaps for the SEC (through a regulation). Courts are not the appropriate forum—for one thing, courts do not know enough—to decide on policy grounds to treat those programs (or others like them) in an exceptional way. *See Sealed Case, supra,* 676 F.2d at 824.

*Affirmed.*