The TRIAX COMPANY

v.

The UNITED STATES.

No. 238–85C.

United States Claims Court.

Oct. 21, 1986.

Timothy W. Willardson, Alpine, Utah, for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## ORDER

SETO, Judge.

This government contract case comes before the court on three discovery motions, specifically, plaintiff's motion to compel production of documents and defendant's motions to stay discovery and for an order protecting from burdensome and duplicative discovery requests. For the reasons discussed below, we GRANT in part and DENY in part plaintiff's motion to compel, DENY defendant's motion to stay discovery, and GRANT in part and DENY in part defendant's motion for a protective order. In the interests of judicial economy and efficiency, the court further ORDERS that this claim shall be transferred, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609(d) (1982), to the Armed Services Board of Contract Appeals (ASBCA) and consolidated with plaintiff's claims that are pending before that board.

## BACKGROUND

Underlying this action is the claim that the Air Force allegedly breached and changed terms of a construction contract, and caused a constructive work stoppage that resulted in over $2,000,000 in damages to plaintiff. Plaintiff moved for summary judgment on November 29, 1985; defendant opposed the motion and cross-moved for summary judgment. Pending the court's ruling on the summary judgment motions, plaintiff requested documents housed at Scott Air Force Base, Illinois (Scott AFB). Defendant asserted that the attorney-client privilege and work product rule protected some of the requested documents from disclosure, and plaintiff moved to compel their production. Defend-

ant then moved to stay discovery pending outcome of the summary judgment motions and for an order protecting from burdensome and duplicative discovery requests. An oral argument on the discovery motions was heard on September 17, 1986, after which counsel briefed the court on issues raised at the argument. Having had the benefit of oral argument, supplemental briefs and responses, and an *in camera* review of documents alleged to be privileged or irrelevant, the court, at plaintiff's request, is prepared to rule on the discovery motions before transferring the case to ASBCA pursuant to section 609(d).

*Privileged Communications and Work Product*

In response to plaintiff's motion to compel production of documents, defendant asserts that certain documents are exempt from discovery under the attorney-client and work product rule privileges. In compliance with the court's September 24, 1986 order, defendant has submitted for *in camera* review the documents claimed as privileged and identified the reasons that warrant their confidentiality. Defendant asserts that the documents it seeks to protect contain attorney-client communications that were made to obtain legal advice with the expectation of confidentiality. *Natta v. Hogan*, 392 F.2d 686, 691–93 (10th Cir. 1968); *American Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426, 430 (D.Mass. 1972); Defendant's Brief at App. 1–2 (affidavits of two Air Force contracting officers attesting that disclosures made with expectation of confidentiality). Plaintiff contends that an essential element of the attorney-client privilege, confidentiality, is lacking in respect to the documents. *See In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 349, 357, 358–59 (D.Mass.1950). Plaintiff also avers that privilege exists only to encourage disclosures by clients to attorneys and therefore the privilege should not be recognized in the instant case. *See Fisher v. United States*, 425 U.S. 391, 403–04, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). We disagree.

 Our review of the documents belies plaintiff's allegation that the communications were for general use and not made with an expectation of confidentiality. *See* Defendant's Brief at App. 1–2. The documents contain legal advice and other information concerning the contract dispute that can be intended only for use of those involved in resolving the dispute or providing information toward that end. Moreover, the attorney-client privilege extends to communications between attorneys and between attorneys and their clients. *See Upjohn Co. v. United States*, 449 U.S. 383, 394–95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981) (communications between corporate employees and counsel to allow corporation to obtain legal advice are protected); *Natta v. Zletz*, 418 F.2d 633, 637 (7th Cir.1969) (correspondence between house and outside counsel for legal advice and assistance clearly protected). In the instant case, the scrutinized communications were between government attorneys or between government agents and attorneys. Therefore, these communications fall within the ambit of the attorney-client privilege and are protected from disclosure.

 Defendant also asserts that several of the documents are privileged under the work product rule as well. *See Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) (attorney's mental impressions, conclusions, opinions and legal theories protected from disclosure); RUSCC 26(b)(2). Defendant avers that this privilege extends to documents prepared by individuals other than an attorney. RUSCC 26(b)(2) (work product of "other representative of a party" protected); *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (work product rule protects material prepared by agents for attorney). Plaintiff rejoins that the documents contain only "summarized advice of counsel" that was "used in public documents," thereby waiving the claim of work product. Plaintiff's Brief at 12; *In re Subpoena Duces Tecum to Fulbright and Jaworski*, 99 F.R.D. 582,

*aff'd*, 738 F.2d 1367 (D.C.Cir.1983). We disagree. We have reviewed the documents and find defendant's claim of work product well founded. The material contained in the documents contains opinions and legal theories on the posture of this claim and therefore shall be protected from disclosure. Further, plaintiff has not adduced proof that the information was in fact used in public documents.

The following documents are protected from discovery under the attorney-client privilege, and when indicated, under the work product rule.

—Item Numbers 49 and 179, which request the same document.
—Item Number 73.
—Item Number 85.
—Item Number 86.
—Item Number 99.
—Item Number 100.
—Item Number 107.
—Item Number 110.
—Item Numbers 111 and 209, which request the same document.
—Item Number 208.
—Item Number 31.
—Item Number 32.
—Item Numbers 125 and 191, which request the same document.
—Item Number 127.
—Item Numbers 139 and 193, which request the same document.
—Item Number 177.
—Item Number 181.
—Item Number 187.
—Item Number 189, which is also protected by the work product doctrine.
—Item Number 190.
—Item Number 195, which is also protected by the work product doctrine.
—Item Number 196, which is also protected by the work product doctrine.
—Item Number 197, which is also protected by the work product doctrine.
—Item Number 198, which is also protected by the work product doctrine.
—Item Number 199, which is also protected by the work product doctrine.
—Item Number 200.
—Item Number 201, which is also protected by the work product doctrine.
—Item Number 202.
—Item Number 203, which is protected by the work product doctrine solely.
—Item Number 204, which is protected also by the work product doctrine.
—Item Number 205.
—Item Number 206, which is protected also by the work product doctrine.

*Waiver of Privilege*

Plaintiff contends that defendant's agency, the Air Force, waived all privilege claims when it provided the Government Accounting Office (GAO) with communications regarding terminating plaintiff for default on the instant contract and did not object to the publication of those communications in a GAO report. *Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C.1984). Defendant concedes that it waived certain privileges but asserts, however, that the waiver is limited to only those documents that discuss the issue of termination for default. *Shermco Industries, Inc. v. Secretary of the Air Force*, 613 F.2d 1314, 1320–21 (5th Cir.1980) (supplying privileged documents to GAO did not waive exemption from release of documents under Freedom of Information Act); *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1978) (en banc). We agree with defendant.

In the instant case, certain documents containing work product were disclosed to government agencies that were investigating the contract dispute. Protection under the work product rule is waived, however, only by disclosures that are inconsistent with the adversary system. *See Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C.Cir.1981). The communications were not disclosed to an adversary in litigation or in a manner inconsistent with the adversarial process. Accordingly, defendant has not waived the protection of the work product rule.

The law governing waiver of attorney-client privilege differs from the law

governing waiver of work product. The attorney-client privilege is waived by any voluntary disclosure, *see In Re Subpoena Duces Tecum*, 738 F.2d 1367, 1369 (D.C. Cir.1984), but may be limited in that voluntary disclosure of privileged documents implies only a waiver of all communications on the same *subject*. *See Chubb*, 103 F.R.D. at 63; *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C.1981). The question before the court, then, is what breadth should be given to the term "subject," more specifically, whether waiving privilege for communications about the termination for default issue should be construed as a waiver to all privileged information that has been generated as a result of the instant contract dispute. Upon due consideration, we delimit the term "subject" in this proceeding to matters concerning the termination for default issue rather than defining it expansively to encompass all issues concerning the contract in dispute. This finding of a limited waiver is in accord with the case law discussing waiver of privilege, *see In re Subpoenas Duces Tecum*, 738 F.2d at 1370; *Diversified*, 572 F.2d at 611; *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156–57 (D.Del. 1977), and is mandated by other considerations as well. First, defendant has not selectively asserted attorney-client privilege with the intent to disclose information when it might be beneficial, while maintaining the privilege when disclosure would be harmful. *See In re Subpoenas Duces Tecum*, 738 F.2d at 1371. Requiring full disclosure of all privileged communications therefore would not serve the purpose of preventing defendant from making only self-serving disclosures, since defendant has not attempted to introduce or use any part of the privileged documents for its own benefit. *See Marshall v. United States Postal Service*, 88 F.R.D. 348, 350–51 (D.D.C.1980). Second, when the Air Force submitted confidential communications to the GAO, it did so with the expectation of continued confidentiality, and a reasonable basis for that expectation exists. *See* 31 U.S.C. § 716(e)(1) (1982) (GAO must maintain same level of confidence as required of agency from which information obtained). The GAO does not provide records that originated from another agency to the public, but its policy is to refer those requesting documents to the originating agency. *See* 4 C.F.R. § 81.5 (1986). Thus, the same mandate of confidentiality adheres to those communications, since the GAO is obligated by its own regulations to maintain the confidentiality of the documents. *See Shermco*, 613 F.2d at 1320–21. Third, many aspects of this contract are in litigation. It would be imprudent to infer a broad waiver of privilege that may be applied in other proceedings in a manner that would unfairly prejudice the government in defending other claims arising under this contract.

Accordingly, we conclude that claims of privilege to the following documents have been waived, and they shall be submitted to plaintiff.

—Item Number 25.

—Item Number 103 (duplicate of 180).

—Item Number 120 (duplicate of 176).

—Item Number 192.

—Item Number 194.

### *Discovery of Settlement Discussions*

■ Defendant asserts that the document requested in items numbered 129, 135 and 188, (which are requests for the identical document) is not discoverable because it conveys information regarding settlement discussions. Plaintiff in response cites Federal Rule of Evidence 408, which precludes the admission of all settlement discussions at trial to prove liability, invalidity of a claim, or its amount, but does not preclude the discovery of settlement discussions, especially when those discussions culminate in a settlement. Fed.R.Evid. 408. Plaintiff asserts that it seeks only to discover the document, not admit it into evidence at trial. *See* Plaintiff's Response at 14. We agree with plaintiff's Rule 408 argument, and find defendant's argument premature and unsupported by law. In addition, the policy consideration underlying Rule 408, namely, to promote nonlitigious solutions to disputes, would not be served at this point by excluding these

documents from discovery. *See, e.g., Reichenbach v. Smith,* 528 F.2d 1072, 1074 (5th Cir.1976). Accordingly, defendant shall produce for plaintiff the documents requested in items numbered 129, 135, and 188.

### Relevance Objections to Production

██ Defendant objects to producing a number of documents on relevance grounds, asserting that these documents contain information that lies outside the scope of plaintiff's claim for increased costs incurred as a result of plaintiff's refusal to begin construction until the production schedule dispute was settled. Defendant asserts that the bounds of relevance are limited by the issues presented in plaintiff's claim to the contracting officer, since those claims form the linchpin of this court's jurisdiction. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981); *Palmer & Sicard, Inc. v. United States,* 6 Cl.Ct. 232, 236 (1984). Plaintiff contends to the contrary that anything related in any way to the planning, award or administration of the contract is relevant, or relevant in that it may lead to the discovery of admissible evidence. *See* Fed.R.Evid. 401; RUSCC 26(b)(1). We are constrained to agree with plaintiff. Although the number of the documents which plaintiff seeks may be substantial, defendant has already collected and photocopied the documents for the court's *in camera* review, and therefore bears a small burden in turning them over to plaintiff. For that reason, defendant shall produce for plaintiff the documents requested in items numbered 20, 37, 38, 39, 40, 45, 46, 47, 50, 101, 143, 178, 182, 183, 184, 186, and 42, 55 and 142, of which three appear to be duplicates of each other. Plaintiff has apparently received items numbered 41, 43, 44 and 141 in the course of other proceedings involving this contract; defendant need not resubmit those documents to plaintiff.

### GAO Documents

██ The remaining documents the court must consider are the GAO documents that defendant has sought to shield

from discovery. The documents falling in this category were generated during a congressional investigation of plaintiff's business practices and do not address the contract dispute now before the court. Plaintiff asserts that GAO regulations do not protect these documents from production and as an agent of defendant, that the GAO must comply with production requests. *See* 4 C.F.R. § 81.6(a), (k) (1986) (Congressional correspondence, attorney work product and attorney-client communications protected from disclosure). After discussing the matter with GAO representatives, defendant concedes that GAO regulations do not prohibit disclosure, but avers that the documents are irrelevant and on that basis should not be produced. *Beard v. New York Central Railroad Co.,* 20 F.R.D. 607, 609 (N.D.Ohio 1957) (discovery procedures designed solely to obtain information for use in the action in which they are employed). Defendant alleges further that two of the documents, items numbered 34 and 35, were prepared on the express condition of confidentiality. Again, we are constrained to agree with plaintiff, although the court's *in camera* review of the documents reveals scant information relevant to the disputed issues. Plaintiff shall be allowed to discover items numbered 1, 2, 5, 6, 7, 8 (when located), 9, 10, and 11. Items numbered 34 and 35 shall not be disclosed, to protect the confidentiality of the communications. Granting plaintiff's request should not overly burden defendant since the documents have been collected and photocopied already for the court. Further, the information contained in these documents may possibly be more relevant to the claims before the ASBCA; allowing their discovery at this juncture may forestall requests for the same documents later. Plaintiff should be aware, however, that discovery may not be used merely to circumvent discovery limitations that it faces in other proceedings. *See Wilk v. American Medical Association,* 635 F.2d 1295, 1300 (7th Cir.1980).

### Location of Depositions

██ Finally, we address the issue of the location at which depositions should

properly be conducted. Plaintiff analogizes the government to a corporation to support its argument that witnesses should be deposed at the "principal place of business," that is, Scott Air Force Base in this situation. *See Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979). Plaintiff asserts further that convenience, efficiency and economy will be promoted by deposing government witnesses at Scott Air Force Base. Defendant countervails that requiring government witnesses to travel from literally all parts of the world is an expense and disruption to government operations that defendant should not be required to bear. Further, defendant avers that Washington, D.C. is defendant's principal place of business, not Scott AFB. We are inclined to agree with plaintiff's allegations of convenience, efficiency and economy. Therefore, government witnesses who are in defendant's control may be required to appear at Scott AFB for depositions. Witnesses not in defendant's control shall be deposed at their place of residence or at another mutually convenient location. Plaintiff shall not, however, have access to the documents on file at Scott AFB. Plaintiff shall complete its document requests before deposing witnesses, and any materials needed at the depositions shall be copied and brought with plaintiff to the depositions.

*Transfer and Consolidation Under 41 U.S.C. § 609(d)*

 At the status conference held on October 7, 1986, the court, hearing that neither party would suffer prejudice as a result, ordered the instant case transferred to the ASBCA and consolidated with other claims arising from change orders under the same contract. 41 U.S.C. § 609(d) (1982). The Federal Circuit has confirmed that "the Claims Court possesses broad discretion in exercising its power to consolidate" cases under section 609(d). *Joseph Morton Co., Inc. v. United States,* 757 F.2d 1273, 1280 (Fed.Cir.1985). The legislative history cited in *Morton* bolsters our decision to transfer this claim to the ASBCA. "It is the intent of the commit-

tees that splitting of the causes of action, or suits, under one contract be kept to a minimum.... [T]he Court of Claims [has] the same ultimate authority to consolidate suits that are split between the court and the agency boards...." S.Rep. No. 1118, 95th Cong. 31, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5265. Therefore, to prevent duplication of efforts and to promote judicial economy, we transfer this case to the ASBCA pursuant to 41 U.S.C. § 609(d). We are satisfied that neither plaintiff nor defendant will be prejudiced by the transfer and indeed will ultimately benefit from this action.

### CONCLUSION

For the reasons stated herein, we GRANT in part and DENY in part plaintiff's motion to compel, DENY defendant's motion to stay discovery, and GRANT in part and DENY in part defendant's motion for a protective order. The clerk is directed to enter judgment transferring this case to the Armed Services Board of Contract Appeals for consolidation with case numbers 31944 *et seq.,* which are before Commissioner Houpe. No costs.

IT IS SO ORDERED.