**FIRST HEIGHTS BANK, FSB, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 96–811C.**

United States Court of Federal Claims.

March 17, 2000.

---

Robert K. Huffman, Washington, D.C., for plaintiff First Heights Bank, FSB, et al.

Kenneth M. Kulak, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Deputy Director Jeanne E. Davidson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

In its January 19, 2000 order, the court addressed in part First Heights' September 24, 1999 motion to compel production in this *Winstar*-related series of cases.[1] In that order, the court rejected the Government's relevance objections and directed production *in camera* of certain exhibits. *See Coast–to–Coast Financial Corp. v. United States,* 45 Fed.Cl. 796, 807 (2000). This order addresses some, but not all, of the remaining issues raised by the motion to compel.

## BACKGROUND

The crisis in the savings and loan industry in the 1980's prompted the federal government, acting through the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings and Loan Insurance Corporation ("FSLIC"), to enter into assistance agreements with various financial institutions and private investment groups. Under these long-term agreements, the institutions and investors purchased the assets and assumed the liabilities of failing thrifts. In turn, the agencies offered certain benefits to the acquirers. The benefit alleged by the plaintiffs here relates to reimbursement for what are known as "covered asset losses." In general, the covered asset loss was equal to the difference between the value of a covered asset as shown on the books of a failed thrift, and the proceeds that an acquirer received from the sale of that asset. These actions are brought by banks who acquired failing thrifts pursuant to acquisition agreements with the FHLBB and FSLIC. The acquiring banks claim that their contracts with the agencies promised the right to deduct losses on assets they acquired from the failing thrifts, even if they were also directly compensated for the loss with FSLIC financial assistance.

According to plaintiffs, concern about these tax deductions prompted the issuance of a 1991 Treasury Department report, which stated that there was uncertainty as to whether covered asset loss deductions were actually authorized under the existing law. Congress reviewed the report and held hearings, and in August 1993 passed legislation stating that, for purposes of determining whether there has been a loss on the disposition of an asset, a taxpayer must take into account any FSLIC or FDIC assistance payments received as compensation for the loss. This legislation was included in a provision of the Omnibus Budget Reconciliation Act of 1993, and was entitled "Clarification of Treatment of Certain FSLIC Financial Assistance." *See* Pub.L. No. 103–66, § 13224, 107 Stat. 485 (1993). Hearings on this legislation were presided over by Rep. Frank J. Guarini, and it is referred to hereafter as "the Guarini legislation."

Plaintiffs allege that the Government breached their contracts by passing the Guarini legislation, which disallowed covered asset loss deductions. They seek damages said to have resulted from this alleged breach.

*First Heights' motion to compel*

The pending motion is prompted by defendant's March 16, 1999 motion for summary judgment on plaintiff First Heights' "tax benefit" claims, to which First Heights on May 21, 1999 filed a response seeking discovery pursuant to RCFC 56(g). First Heights subsequently took steps to narrow its discovery request by compiling a reduced list of documents that it asserted it needed in order to respond to the Government's summary judgment motion. The narrowed request was broken into four categories, each of which listed various documents identified in the Government's affidavits and privilege logs as responsive to the plaintiffs' original joint discovery request. This narrowed request was provided to the Government in an

---

1. *See Winstar Corp. v. United States,* 21 Cl.Ct. 112 (1990), *aff'd,* 64 F.3d 1531 (Fed.Cir.1995), *aff'd,* *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

August 1999 letter sent by First Heights. The list of documents comprising First Heights' narrowed discovery request is reproduced in Attachments 1–4 to Exhibit A of defendant's September 3, 1999 motion to stay discovery. The parties refer to these documents throughout their briefing as the Category 1, Category 2, Category 3 and Category 4 documents, respectively, and the court adopts these classifications for purposes of this order.

With a few exceptions, the Government objected to producing the documents contained in Categories 1–4, arguing that they were irrelevant to the issues presented by the summary judgment motion. The Government also asserted various privilege claims with respect to the documents sought by First Heights. In its January order, the court denied the Government's comprehensive relevance objections to production of the documents in Categories 1–4, and ordered production of Category 1 and 2 documents for *in camera* review in order to facilitate an assessment of the privilege claims. This review is now complete, and the court is prepared to order the production of certain documents contained in Categories 1 and 2. This order also resolves the parties' dispute over the documents in Categories 3 and 4, with the exception of a small number of documents in Category 3 which the Government will be required to submit for *in camera* review. Accordingly, First Heights' motion to compel is granted in part and denied in part with respect to Categories 1, 2 and 4, and with respect to the majority of documents in Category 3. It is still pending with respect to a small number of documents in Category 3.

## DISCUSSION

### A. Category 1 Documents

The Category 1 documents relate to the standard Assistance Agreement provisions or proposal instructions. The Government asserts attorney-client privilege for thirteen of the fifteen documents, and the work product privilege for the one of the documents. It has already released the remaining document.

*Attorney-client privilege*

First Heights' assertion that the Government has not provided sufficient detail in its privilege logs to justify its attorney-client privilege claims is without merit. The Category 1 documents for which the privilege is claimed are characterized as memos and reports giving legal advice to the Government relating to the terms of the Acquisition Agreements. Most of the Category 1 documents in the Government's privilege log are identified by author, addressee, and date. All but one of the documents was either authored by or addressed to Hopkins & Sutter, the outside counsel brought in to represent FSLIC and the FHLBB in connection with the drafting of the Assistance Agreements.

■ Even if the information in the privilege log is ambiguous, the court is persuaded after reviewing the documents that they are subject to the attorney-client privilege. While the Government may bear the burden of persuading the court that the communication at issue arose out of an actual attorney-client relationship, *see Eagle–Picher Industries, Inc. v. United States,* 11 Cl.Ct. 452, 456 (1987), this burden is satisfied if "the overall tenor of the document indicates that it is a request for legal advice or services." *In re Spalding Sports Worldwide, Inc.,* Misc. Dkt. No. 595 at 9 (Fed.Cir.2000). Moreover, it is not necessary that the party invoking the privilege expressly request confidential legal assistance when that request is implied. *See id.*

In this case, the Category 1 documents consist largely of requests from FSLIC and FHLBB officials to attorneys at Hopkins and Sutter seeking assistance in drafting the tax benefit provisions of the Acquisition Agreements, and the corresponding responses provided by Hopkins and Sutter. Absent a possible waiver, which is discussed below, FSLIC's communications as a client seeking legal advice from Hopkins and Sutter are subject to the attorney-client privilege. *See American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 745 (Fed.Cir.1987). The drafts and notes provided by Hopkins and Sutter are also subject to the privilege unless the privilege is found to have been waived. *See In re*

*Sealed Case,* 877 F.2d 976, 979 (D.C.Cir.1989) ("The attorney's communications ... to the client must also be protected, because otherwise it is rather easy to deduce the client's communications to counsel.").

The attorney client privilege can be waived. ,*See Genentech v. United States Int'l Trade Commission,* 122 F.3d 1409, 1415 (Fed.Cir.1997). In this case, First Heights argues that the Government waived the privilege in earlier litigation in federal district court in the Eastern District of Michigan, during which the FDIC brought suit against First Heights for an alleged breach of the Assistance Agreement. First Heights initially filed counterclaims against the Government, but subsequently withdrew them in order to pursue relief independently in this court. In the Michigan litigation, the Government relied on declaration and deposition testimony from its leading outside counsel, Hopkins and Sutter attorney Michael Duhl, who drafted the standard Assistance Agreement provisions that were used as models when the Government entered into agreements with individual thrifts.[2] The Government argues that the use of Mr. Duhl's testimony did not waive the attorney-client privilege, and that even if it did, the waiver would not extend to the Category 1 documents sought by First Heights.

■ The attorney-client privilege "evaporates upon any voluntary disclosure of confidential information to a third party." *Carter v. Gibbs,* 909 F.2d 1452, 1458 (Fed.Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). When a party discloses privileged material for strategic purposes, this may imply a waiver of privilege with respect to all other communications on the same subject. *See Triax Co. v. United States,* 11 Cl.Ct. 130, 134 (1986). The rationale supporting the implied waiver doctrine is discussed at length by the D.C. Circuit in *In re Sealed Case:*

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-

client relationship waives the privilege. When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter because "the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former."

> A simple principle unites the various applications of the implied waiver doctrine. Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege. Thus, since the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-client relationship, voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege. Disclosure is inconsistent with confidentiality, and courts need not permit hide-and-seek manipulation of confidences in order to foster candor.

*In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982) (citations omitted).

■ In this case, the Government chose to use Mr. Duhl as an expert witness while litigating against First Heights in district court. Indeed, it fought to have Mr. Duhl testify as to his personal knowledge of the 1988 transactions, and sought to rely on his opinions regarding the proper interpretation of disputed terms in the First Heights Acquisition Agreement. Mr. Duhl's testimony included statements focusing on the meaning of the same disputed tax benefit provisions at issue here.

Furthermore, the Government was made aware of the implications that Mr. Duhl's deposition testimony would have for attorney-client privilege claims. When the Gov-

---

**2.** Mr. Duhl was employed by the law firm of Hopkins & Sutter from 1971 till 1997. He testified during his deposition that he specialized in tax matters and also in savings and loan and banking matters, and that he "spent the better part of the 1980s representing the Federal Home

Loan Bank Board, the Federal Savings & Loan Insurance Corporation, and the Federal Deposit Insurance Corporation." *See* Vol. 1, Ex. J of First Heights' Exhibits to its Motion to Compel, at 7.

ernment's attorney asserted during a pre-trial hearing that First Height's cross-examination of Duhl should be limited to items already in the public record, the magistrate judge disagreed. He warned the Government that "To the extent you are relying on Mr. Duhl's subjective belief as the drafter of this agreement as to what it means, then the defendant has the right to thoroughly explore and to ask questions about anything which would contradict Mr. Duhl's steadfast belief that this is the meaning of the language. I don't think you can claim privilege." *See* Vol. II, Exhibit N of First Heights Exhibits to its Motion to Compel, at 22. The Government's attorney acknowledged the warning, stating "I think they have been able to do that, but that's how we will conduct the deposition then." *Id.* In these circumstances, the Government waived the privilege "as to all other communications relating to the same subject matter." *See In re Sealed Case,* 676 F.2d at 818; *see also Triax Co.,* 11 Cl.Ct. at 133–34; *Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984); *United States v. Exxon Corp.,* 94 F.R.D. 246, 249 (D.D.C.1981).

The Government argues, however, that any waiver did not extend to the current litigation and does not encompass the Category 1 documents. It contends that when First Heights' chose to withdraw its counterclaims in the Michigan litigation to pursue the action here, plaintiff thereby nullified any earlier privilege waiver. We disagree. The present proceedings involve the same parties litigating a dispute over the interpretation of the same tax benefit provisions of the same agreement that was at issue in the district court litigation. Indeed, the Government demonstrated this when it repeatedly relied on alleged admissions by First Heights in the Michigan litigation to support its pending motion for summary judgment. *See* Def.'s March 16, 1999 PFUF at 12–13; Def.'s March 16, 1999 Motion for S.J. at 26–27. The Government cites no direct authority for its position, and the cases discussed in the parties' briefs in fact support the opposite conclusion. *See Genentech,* 122 F.3d at 1417 (Fed.Cir.1997) (inadvertent waiver of attorney-client privilege in district court liti-

gation carries over into subsequent litigation before the United States International Trade Commission); *In re Sealed Case,* 877 F.2d at 977 (corporation's waiver of attorney-client privilege during routine audit by Defense Contract Audit Agency carried over into independent grand jury investigation of corporation's business activities); *In re Sealed Case,* 676 F.2d at 823–24 (voluntary waiver of attorney-client privilege during SEC investigation carried over into subsequent grand jury investigation).

Nor does the fact that the Category 1 documents were not produced in the district court litigation mean that they automatically fall outside the scope of the Government's privilege waiver. If this were the case, it would create a perverse incentive for a party in the Government's situation to use the privilege as both a sword and a shield by selectively disclosing information only where it might be beneficial, and then maintaining the privilege for other communications concerning the same subject matter where disclosure might be harmful. *See In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371 (D.C.Cir. 1984); *Triax Co.,* 11 Cl.Ct. at 134. As the D.C. Circuit has taught in *In re Sealed Case,* the waiver in fact embraces "all other communications relating to the same subject matter." 676 F.2d at 818.

The Category 1 documents are plainly communications that deal with the same "subject matter" as the communications for which the Government waived privilege in Michigan. Initially, the court notes that determining the scope of a subject matter waiver of the attorney-client privilege depends heavily on the factual context in which the privilege is asserted. *See In re Sealed Case,* 877 F.2d at 980–81. The fact that the disclosure of privileged communications in the Michigan litigation was intentional rather than inadvertent, and the fact that the Government sought to introduce the contents of those privileged communications as evidence for its own benefit, counsels against a restrictive interpretation of the scope of the waiver. *See Triax Co.,* 11 Cl.Ct. at 134. Furthermore, the Government disclosed privileged communications with full awareness of the potential implications for its ability to later

claim attorney-client privilege in connection with the legal advice it received from Mr. Duhl. *See* Vol. II, Exhibit N of First Heights Exhibits to its Motion to Compel, at 22. This, too, counsels against a restrictive interpretation of the waiver. *See Triax Co.*, 11 Cl.Ct. at 134.

The most significant evidence regarding the scope of the waiver, however, comes from the Government's own description of the subject matter of Mr. Duhl's deposition testimony in the Michigan litigation. It filed a supplemental brief devoted solely to discussing Mr. Duhl's testimony. In this brief, the Government took an expansive view of the scope to Mr. Duhl's testimony. The first two footnotes to the brief demonstrate the point:

Note 1:

During the deposition, counsel for Defendants objected that the FDIC's questioning went beyond the permissible "scope" of the deposition. However, the December 19 Order imposed no limitation on the scope of the deposition, and in requesting the deposition, the FDIC specifically stated that Mr. Duhl would testify about "the general circumstances surrounding all of the 1988 FSLIC Southwest Plan assistance transactions, including the First Heights transaction ... Mr. Duhl's testimony ... will be based on his personal knowledge, as a first-hand participant in many of the events that took place in 1988 with respect to the Southwest Plan." During the December 19 hearing on the FDIC's Request, counsel for the FDIC stated that Mr. Duhl's testimony "goes to the surrounding circumstances of the transaction and of all the deals in 1988."

Note 2:

During the deposition, counsel for Defendant's objected to nearly all the FDIC's questions, often on the ground that Mr. Duhl was being asked to provide opinion testimony. However, in most instances

where Defendants objected, Mr. Duhl was not offering an opinion, but was relating facts based on his personal knowledge. In addition, as Defendants are aware, the FDIC intends to offer Mr. Duhl's testimony as both a fact witness and as an expert in the events surrounding the FSLIC's Southwest Plan, and the drafting and negotiation of FSLIC assistance agreements, including the Agreement at issue in this case, based on his specialized "knowledge, skill, experience, training or education".

*See* Vol. II, Exhibit M of First Heights Exhibits to its Motion to Compel, at 1 (ellipses in original) (internal citations omitted).

The majority of the Category 1 documents relate to Mr. Duhl's work in drafting the tax benefit provisions in the model Southwest Plan acquisition agreement, which was used as the basis for drafting the specific Acquisition Agreement between the Government and First Heights. Such materials clearly fall within the scope the Government's description of Mr. Duhl's testimony in the Michigan litigation. With two exceptions, therefore, the Government's choice to unveil its confidential communications with Mr. Duhl in order to bolster its litigation position in the district court leaves the Government unable to rely on the attorney-client privilege as a basis for withholding the Category 1 documents sought here.

Accordingly, the parties' dispute over the Category 1 documents is resolved as follows:

WFS0190000310–0313: privilege waived.

WFS0190000319–0321: privilege waived.

WFS0150000058–0060: privilege waived.

WFS0150000149–0154: privilege waived.

WFS0150000467–0467: The privilege is retained.[3]

WFS0150001219–1221: privilege waived.

WFS0230000014–0021: privilege waived.

WFS0230000013–0013: The privilege is retained.[4]

---

**3.** This document is a letter from a Government employee requesting Mr. Duhl's assistance with respect to a particular transaction. This letter does not appear to contain any information that Mr. Duhl could have used in drafting the standard Assistance Agreement provisions, and instead is simply a request from one of his clients for assistance regarding a specific situation arising in a transaction that is not at issue here.

**4.** This document does not contain any information that Mr. Duhl could have used in drafting the standard Assistance Agreement provisions, and from the context it appears unlikely that Mr. Duhl viewed this document. The waiver result-

WFS0190000286–0286: privilege waived.

WFS0200000476–0477: privilege waived.

WFS0200000465–0474: privilege waived.

WFS0090001487–1494: privilege waived.

WFS0150000072–0078: No privilege claimed; the document has been released.

WFS0190000294–0297: privilege waived.

WFS0100000740–0754: This document is privileged under the work product doctrine.[5]

### B. Category 2 Documents

Category 2 includes documents which "address the deductibility of covered asset losses and/or IRC section 597 [26 U.S.C. § 597] and that were written by, to, or about communications with certain IRS officials who participated in the First Heights transaction or other FSLIC-assisted transactions." Category 2 includes fifteen documents, two of which the Government has already released. The Government asserts attorney-client privilege for five of the fifteen documents, the work product privilege for two of the documents, and the deliberative process privilege for four of the documents. The Government also asserts a statutory privilege based on 26 U.S.C. § 6103 for six of the Category 2 documents.

*Attorney-client privilege*

■ First Heights' motion to compel asserted that the Government did not provide sufficient information to justify its attorney-client privilege claims for several of the Category 2 documents. In its response brief, the Government indicated that it was abandoning its privilege claim for one of the documents, and provided additional information explaining that the other documents were prepared in anticipation of potential litigation between the IRS and thrift acquirers who disagreed with the IRS's interpretation of the tax laws governing deductions for covered asset losses. The Government's additional information is sufficient to show that the documents in question are subject to the attorney-client privilege.

First Heights also argues that the Government waived the attorney-client privilege for the Category 2 documents by twice submitting analysis from one of FSLIC's outside counsel at Thacher, Proffit & Wood ("TPW") to Congress in the form of attachments to public reports prepared by FSLIC and the Resolution Trust Corporation ("RTC"). The Government argues these disclosures did not waive the privilege because the reports to Congress were mandated by law and the attachments from FSLIC's outside counsel were necessary to assist Congress in understanding the reports.

Section 501(a) of FIRREA demonstrates that the RTC was obligated to report to Congress on the costs and tax consequences of the 1988 Acquisition Agreements. *See* 103 Stat. 183, 373 (1989). The Government does not, however, point to any statutory language or provide any argument to support the conclusion that the Government had to disclose the legal advice it received from its attorneys. The analysis contained in the TPW memos could have been incorporated in the reports without the Government specifically identifying the source. Instead, the Government chose to disclose the advice it received from its attorneys in an effort to bolster the credibility of its request for Congress to "clarify" the law on deductions of covered asset losses. Such disclosure waives the attorney-client privilege as to all other prior communications between the Government and its attorneys on the same subject matter. *See Carter*, 909 F.2d at 1458; *In re Sealed Case*, 676 F.2d at 818.

■ The Government's waiver of the attorney-client privilege through its disclosure of the TPW memos does not mean, however, that the Government is unable to claim attorney-client privilege for any of the Category 2 documents. Several of the documents for which the privilege is asserted were created months or years after the date on which the Government waived the privilege by disclosing the TPW memos. The rationale behind

---

ing from the Government's use of Mr. Duhl's drafts and deposition testimony in the earlier district court litigation does not extend to this particular document.

5. First Heights concedes that the Government has provided sufficient information to justify its invocation of the work product privilege for this document.

the implied waiver doctrine is that once one party chooses to publicly disclose its attorney's advice for strategic purposes, the opposing party "must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice—whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client." *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3rd Cir.1995). In other words, the waiver necessarily encompasses attorney-client communications on the same subject matter that took place *prior to* the waiver. *See also In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989) ("if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege").

The parties have cited no cases, however, and the court has found none, in which disclosure of confidential communications was held to have waived the privilege for all *future* communications between an attorney and client concerning the same subject matter. The rationale behind the rule does not dictate a permanent waiver. If it were otherwise, the attorney-client confidence could never be revived, even during litigation. The Government, therefore, has not waived its privilege for any Category 2 documents created after the date of the Government's disclosure of the TPW memos.[6]

*Work product privilege*

■ The work product doctrine affords a qualified privilege to materials prepared in anticipation of litigation. *See* RCFC 26(b)(2). The Government claims work product privilege for two of the Category 2 documents created by and circulated among high level counsel at the Internal Revenue Service ("IRS"). First Heights argues the Government has failed to substantiate its work product claims by failing to identify the anticipat-

ed litigation for which the documents were allegedly prepared. As the Government points out in its response brief, however, the Department of the Treasury report on the 1988/1989 FSLIC transactions, issued on March 4, 1991, stated that the IRS planned to challenge and litigate attempts by acquirers to claim deductions for covered asset losses. The two documents for which the Government claims the work product privilege were circulated fifty days later, and discuss issues relating to the potential litigation identified in the Treasury report. The Government has provided sufficient information to justify its assertion of the work product privilege.

*Deliberative process privilege*

The Government originally asserted the deliberative process privilege for seven of the fifteen documents in Category 2. It subsequently dropped that assertion for three of these documents, leaving four documents in Category 2 that are purportedly shielded from disclosure by the privilege.

■ The deliberative process privilege, a subset of the executive privilege, is designed to promote frank and candid deliberations among executive agencies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). It was first recognized by the United States Court of Claims in *Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (1958) ("So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against the public interest[,] but not absolutely"). The privilege protects evidence from disclosure if it is pre-decisional and deliberative in nature, "in that it makes recommendations or expresses opinions on legal or policy matters." *See Walsky Constr. Co. v. United States*, 20 Cl.Ct. 317, 321 (1990) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975)). The privilege is not absolute, and may be "overcome upon a

---

**6.** This limitation on the Government's waiver does not apply to those Category 2 documents drafted by Michael Duhl and Hopkins & Sutter.

The waiver of privilege for those documents did not occur until the Michigan district court litigation, which was ongoing until 1999.

showing of evidentiary need weighed against the harm that may result from disclosure." *See Abramson v. United States*, 39 Fed.Cl. 290, 295 (1997) (quoting *CACI Field Servs. v. United States*, 12 Cl.Ct. 680, 687 (1987), *aff'd* 854 F.2d 464 (Fed.Cir.1988)).

First Heights' motion to compel presents several objections to the Government's assertion of the deliberative process privilege. Only two, however, need to be addressed.[7] Initially, First Heights argues that the deliberative process privilege does not apply where the Government's intent is at issue. First Heights also contends that even if the privilege does apply, the documents in question should still be produced, because First Heights has demonstrated a compelling need sufficient to override the Government's interest in confidentiality.

Relying on *In re Subpoena Duces Tecum*, 145 F.3d 1422 (D.C.Cir.1998), First Heights argues that "the deliberative process privilege does not apply where plaintiffs' cause of action turns on the intent of Government officials." The Government responds that the documents for which it asserts deliberative process privilege are not relevant to First Heights' claims because the Government's intent is not at issue. The Government's relevance arguments were evaluated and rejected by this court in its January 19, 2000 order. That order contained extensive discussion relating to the potential relevance of the Government's intent in connection with the defenses raised in its summary judgment motion, and that discussion need not be repeated here. *See Coast–to–Coast*, 45 Fed.Cl. at 802–05.

In addition to its relevance arguments, however, the Government argues that the D.C. Circuit's decision in *In re Subpoenas* should not be followed because it "is contrary to the law of the United States Court of Appeals for the Federal Circuit, unsupported by any precedent, inconsistent with the public policy underlying the privilege, and presages substantial harm to the Government decision making process if it were accepted by this Court." *See* Def.'s Response to First Heights Pl.'s Motion to Compel at 24.

Although the court agrees with the D.C. Circuit's observation in *In re Subpoenas* that assertions of the deliberative process privilege present unique problems when the Government's intent is at issue, the court also believes that Federal Circuit precedent on this question favors continued use of a case-by-case analysis to determine whether or not a plaintiff's need for particular evidence can overcome the Government's interest in maintaining the confidentiality of internal deliberations. In *Zenith Radio Corp. v. United States*, the Federal Circuit addressed the Government's assertion of executive privilege for a number of documents dealing with internal agency deliberations. 764 F.2d 1577, 1580 (Fed.Cir.1985).[8] The court rejected the plaintiff's argument that the Government had automatically waived the privilege by initiating a lawsuit which implicated issues that were discussed in the documents being sought. The court stated that "the privileges the government asserted covered ... the communications, discussions, and deliberations among government officials that the executive privilege protects. These privileges involve subtle and sensitive questions and ordinarily should not be breached without a more penetrating analysis than the automatic waiver rule involves." *Id.* at 1580. The court went on to find that the plaintiffs had not made the "strong showing" of need required to justify breaching the Government's privilege. *See id.* at 1580–81.

7. Although the Government asserts the deliberative process privilege for four documents in Category 2, the parties' briefing on the deliberative process privilege took place primarily in the context of Categories 3 and 4, with both parties agreeing that the arguments presented also applied to the Government's deliberative process claims for Category 2. The parties' dispute over discovery of the Categories 3 and 4 documents is dealt with below. *See infra* at 324–25.

8. Although the Federal Circuit used the label "executive privilege," it defined the privilege by citing to the Court of Claims' description of deliberative process privilege in *Kaiser Aluminum & Chemical Corp.*, 157 F.Supp. at 946. *See Zenith Radio Corp.*, 764 F.2d at 1580. In doing so, the Federal Circuit reaffirmed the Court of Claims' recognition of the deliberative process privilege. *See Abramson*, 39 Fed.Cl. at 293 (discussing connection between "executive privilege" discussed in *Zenith* and deliberative process privilege discussed in *Kaiser Aluminum* ).

The court thus declines to follow the reasoning of *In re Subpoenas* to the extent that it supports an automatic bar on assertions of deliberative process privilege in any case where the Government's intent is potentially relevant. Instead, the court will apply the approach described in *Zenith* and used consistently in this court, in which the privilege may be overcome, but only after "a showing of evidentiary need weighed against the harm that may result from disclosure." *CACI Field Serv.*, 12 Cl.Ct. at 687; *see Abramson*, 39 Fed.Cl. at 297.

■ First Heights has made the necessary showing. It argues that these documents shed significant light on the parties' understanding regarding the deductibility of covered asset losses at the time of the 1988–89 FSLIC assisted transactions. This information is potentially important for First Heights' response to the Government's "assumption of risk" defense, which argues that First Heights assumed the risk of a subsequent clarification or change in the tax code regarding the availability of deductions for covered asset losses. In addition, First Heights contends that the documents it seeks are critical to the issue of whether FDIC, RTC, and Treasury officials breached Section 31 of the Assistance Agreement, which obligated both parties to act in good faith and use their best efforts to see that each side received the benefits contracted for. It also argues that the documents it seeks may reveal significant information on the extent of IRS and Treasury involvement in the acquisition transactions, which may be key to rebutting the Government's argument than any promise regarding deductions for covered asset losses was made without the authority of the Secretary of the Treasury, as required by 26 U.S.C. § 7801. While the Government disputes relevance, the court considered those arguments in its January order, and concluded that the documents sought by First Heights may in fact have considerable relevance to the issues presented by the Government's summary judgment motion. *See Coast–to–Coast*, 45 Fed.Cl. at 800–04.

First Heights contends that production of the documents it seeks is the only way to obtain information critical to responding to the various defenses raised by the Government. The Government has not challenged this assertion or suggested a comparable alternative source. Nor has it articulated any specific or significant harm that would result from disclosure of the particular documents sought here. As the court noted in the January order, the documents sought by First Heights may contain "significant information" relating to the Government's defenses. *See id.* at 804. Access to these documents may be the only means available to permit First Heights to adequately respond to the Government's pending summary judgment motion. First Heights, therefore, will be permitted to obtain those Category 2 documents for which the Government asserts the deliberative process privilege.

### Internal Revenue Code (IRC) § 6103

The Government asserts a statutory privilege based on IRC Section 6103 for six of the Category 2 documents. Section 6103 prohibits disclosure of any "return" or "return information." Return information is defined in 6103(b)(2) as:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, or other imposition or offense[.]

26 U.S.C. § 6103(b)(2)(A). According to the Government, the documents sought here contain return information relating to particular savings and loan institutions and savings and loan acquirers.

In response, First Heights argues that it does not seek return information, and instead seeks only more generalized information and analysis concerning the extent of IRS involvement in formulating Government policy on the treatment of deductions for covered

asset losses. First Heights contends that Section 6103 does not permit wholesale withholding of documents, and that the Government should be required to produce the documents sought after redacting any return information contained therein.

The Government offers two responses to First Heights' arguments. First, it contends that the Supreme Court's decision in *Church of Scientology of California v. Internal Revenue Service,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), undermines First Heights' asserted right to receive redacted documents. The plaintiffs in *Church of Scientology* sought to force the IRS to release information that was specific to particular taxpayers, arguing that such release was required under Section 6103 after taxpayer identifiers (i.e., specific names, specific amounts of liability, etc.) were redacted. The Supreme Court disagreed. It reviewed the definition of return information quoted above, and held that the term return information was not restricted to information that could *identify* a particular taxpayer. *See Church of Scientology,* 484 U.S. at 16–18, 108 S.Ct. 271. The Court instead accepted a broader reading, finding that return information encompassed information and data that specifically deals with a particular taxpayer, even if no identifying information is present. *See id.*

The Government argues that under plaintiff's interpretation of this portion of [Section 6103], disclosure of return information would be permissible so long as taxpayer identifiers were redacted. The Government goes on to point out that such an interpretation was rejected by the Supreme Court in *Church of Scientology.* The problem with the Government's argument here, however, is that First Heights never asserts that disclosure of return information would be permissible so long as taxpayer identifiers were redacted. Instead, First Heights seeks only to obtain any *non*-return information found within the Category 2 documents after all the return information has been redacted. The Court in *Church of Scientology* did not hold that the mere presence of any return information within a document renders the entire document non-discoverable. The Government's

discussion of *Church of Scientology,* therefore, is largely irrelevant to the issues raised by First Heights' request.

The Government's second response to First Heights' redaction request is to argue that *all* the information in the documents sought constitutes protected return information under Section 6103, and therefore none of it has to be provided to First Heights. Both parties cite to the D.C. Circuit's decision in *Tax Analysts v. Internal Revenue Service,* 117 F.3d 607, 615 (D.C.Cir.1997), for the proposition that the crucial test for withholding under Section 6103 is whether the information itself is taxpayer specific. The Government argues that here, all the return information in fact relates to specific taxpayers or groups of taxpayers, e.g., particular savings and loan institutions or savings and loan acquirers. This argument, however, overlooks two important distinctions.

■ First, several of the documents for which the Government claims privilege contain information that is not return information at all, let alone return information relating to specific taxpayers or groups of taxpayers. Second, the *Tax Analysts* court emphasized that Section 6103 prevents disclosure of information that is "unique to the *particular taxpayer,*" but it did not hold that Section 6103 encompasses all information that is unique to *types* of taxpayers. *See Tax Analysts,* 117 F.3d at 614–15 (emphasis added). By definition nearly all IRS documents are specific to "groups of taxpayers." The Government's argument would sweep into of Section 6103 all IRS documents that contained generalized legal analysis and policy information relating to the application of particular sections of the tax code to groups of taxpayers, a result directly at odds with *Tax Analysts. See Tax Analysts,* 117 F.3d at 616 (holding that general legal analysis and policy information in IRS Field Service Advice Memoranda is not protected under Section 6103). The Government, therefore, will be required to release the Category 2 documents after redacting any return information found therein.

Accordingly, the parties' dispute over the Category 2 documents is resolved as follows:

IGT0090000067–0069: The Government asserts the Section 6103 privilege for this document. The majority of the document discusses general IRS policy regarding covered asset losses after the release of the March 1991 Treasury report. It contains a minimal amount of taxpayer specific "return information" under IRC Section 6103. Specifically, the final two sentences of the first paragraph and the final sentence of the third paragraph constitute protected return information. The Government is directed to release the balance of the document.

IGT0090001850–1852: The Government asserts attorney-client privilege and Section 6103 privilege for this document. The Government's release of the TPW memos waived the attorney client privilege for this document. The document contains return information under Section 6103, but this information can be readily redacted. Specifically, the entire first paragraph, with the exception of the first and last sentences, constitutes protected return information. The first two sentences of the third paragraph are also protected return information. The Government is directed to release the balance of the document.

TGT0010003222–3225; TGT0010003262–3264; TGT0010003560–3570: The Government asserts the deliberative process privilege for these documents. First Heights has shown a compelling evidentiary need that outweighs any harm that may result from disclosure. The Government is directed to release the documents.

WFS0140001680–1685: The Government asserts attorney-client privilege for this document. This document was authored by Michael Duhl, the Government's outside counsel from Hopkins & Sutter. Pursuant to the waiver analysis outlined above in connection with the Category 1 documents, the Government has waived its privilege.

WFS0140001686–1690: The Government asserts attorney-client privilege for this document. This document is simply a draft of the preceding document, and the Government has waived its privilege.

WFS0150000053–0057: No privilege claimed; the document has been released.

FGT0080000011–0031: No privilege claimed; the document has been released.

IGT0090000016–0017: The Government asserts the Section 6103 privilege for this document. The document does not contain protected return information, however, and so the Government is directed to release the document.

IGT0070000172–0183: The Government asserts the Section 6103 privilege for this document. All the information in the document appears to be protected return information, and so it is privileged under Section 6103.

IGT0060001231–1233: The Government asserts the attorney-client privilege and the work product privilege for this document. This document is protected from release by the work product privilege.

IGT0090001847–1849: The Government asserts attorney-client privilege, work product privilege, and Section 6103 privilege for this document. It is a copy of the previous document with an additional attachment, including handwritten notes. It is protected from release by the work product privilege.

TGT0010003753–3754: The Government asserts the deliberative process privilege for this document. First Heights has shown a compelling evidentiary need that outweighs any harm that may result from disclosure. The Government is directed to release the document.

IGT0070000418–0466: The Government asserts the Section 6103 privilege for this document. All the information in the document appears to be protected return information, and so it is privileged under Section 6103.

## C. Categories 3 and 4 Documents

*Deliberative process privilege*

The primary privilege relied on by the Government in connection with the documents in Categories 3 and 4 is the deliberative process privilege. The discussion of the parties' arguments concerning deliberative process privilege was drawn from the parties' briefing on Categories 3 and 4. In addition to the arguments discussed above, First

Heights argues that the Category 3 and 4 documents are necessary to help determine if the Guarini legislation "targeted" the contracts entered into by thrift acquirers during the 1988–89 FSLIC assisted transactions. First Heights contends that the issue of potential targeting is key to determining whether the Government can successfully use the unmistakability defense [9] presented in its pending summary judgment motion. The court's earlier order discussed this issue at length, and determined that the potential presence of targeting was relevant to consideration of the Government's unmistakability defense. *See Coast-to-Coast,* 45 Fed.Cl. at 802–04. The court also discussed the manner in which documents such as the Category 4 revenue estimates could be used to prove that Congress targeted the contracts of thrift acquirers. *See id.* at 804–05.

As noted in the court's preceding discussion of Category 2, the Government's only substantive response to First Height's arguments concerning its need for the Categories 3 and 4 documents is to object on grounds of relevance. The court's January order considered and denied the Government's comprehensive relevance objections. *See Coast-to-Coast,* 45 Fed.Cl. at 807. The Government has not provided any other reason to believe that the documents sought are unimportant, and there does not appear to be any way that First Heights could obtain the same information through alternative means. First Heights, therefore, has a demonstrated a compelling need for the Categories 3 and 4 documents sufficient to overcome the Government's assertion of the deliberative process privilege.

*Other privileges*

The remaining privilege disputes between First Heights and the Government involve a relatively small number of documents in Category 3, and one document in Category 4. The Government asserts the work product privilege for eight documents in Category 3. First Heights objects that the Government has not provided sufficient information to justify its assertion, and in particular that the Government has failed to specify the anticipated litigation for which the documents were prepared. As noted in the court's discussion of Category 2, however, the Government's response brief correctly points out that in 1991 the IRS anticipated litigation concerning deductions for covered asset losses, based on the controversy over the Treasury Department's and the IRS's asserted view that such deductions were not justified under the law at the time. Indeed, the present case is an example of the type of litigation anticipated by the IRS. The majority of the Category 3 documents for which the Government asserts the privilege appear to have been prepared by and circulated among IRS attorneys. Given the factual context in which the documents were prepared, and in light of the court's *in camera* review of similarly titled documents found in Category 2, the court concludes that the Government has provided sufficient information to justify its assertion of the work product privilege. *See Deuterium Corp. v. United States,* 19 Cl.Ct. 697, 701 (1990) (upholding assertion of work product privilege, and emphasizing that the work product doctrine is designed to ensure that the attorney "provide—at the first expectation of litigation—full, fair, and frank counsel to potential clients."); *see also* Wright & Miller, *Federal Practice and Procedure,* Civil § 2024, at 198.

The Government also asserts the attorney-client privilege for eleven documents in Category 3.[10] Three of these were prepared by Michael Duhl of Hopkins & Sutter, and pursuant to the court's discussion concerning Category 1, the Government has waived its privilege for these documents.[11] As to the remaining eight documents, it is unclear whether they deal with subject matter that is within the scope of the Government's waiver

---

9. The "unmistakability defense" refers to the Government's argument that a contract should not be construed to restrict the Government's sovereign power to tax unless the Government surrenders that power in unmistakable terms.

10. The Government originally asserted the attorney-client privilege for twelve Category 3 documents, but it withdrew its claim of attorney-client privilege for document TGT001 2753, and instead relies on the deliberative process privilege.

11. One of these documents, however, document WFS011 2052, is protected by the work product privilege.

326

resulting from its disclosure of the TPW memos to Congress. The Government, therefore, is directed to submit these documents to the court for *in camera* review.[12]

Finally, the Government asserts the Section 6103 privilege for eight documents in Category 3 and one document in Category 4. The Government is directed to produce these documents after redacting them to remove protected return information. This redaction should be done in a manner consistent with the court's treatment of the Government's Section 6103 privilege claims for the Category 2 documents discussed above.

Accordingly, the following is ordered:

(1) First Heights' motion to compel is granted in part and denied in part with respect to Categories 1, 2 and 4, and with respect to the majority of documents in Category 3. It is still pending with respect to a small number of documents in Category 3.

(2) On or before March 31, 2000, the Government is directed to produce the appropriate documents in Categories 1–4, consistent with the court's directions in this order.

(3) On or before March 24, 2000, the Government is directed to submit for *in camera* review the Category 3 documents for which it asserts attorney-client privilege, excluding those for which the court has indicated the privilege has been waived, and excluding those for which the Government has also asserted valid claims of work product privilege.

12. The Government need not submit documents TGT002 1522–24, TGT002 0498–0529, and IGT006 0962, because the Government has asserted valid work product privilege claims for these documents.