**FIRST HEIGHTS BANK, FSB, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–811C.

United States Court of Federal Claims.

June 16, 2000.

Robert K. Huffman, Washington, D.C., for plaintiff First Heights Bank, FSB, et al.

Kenneth M. Kulak, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Deputy Director Jeanne E. Davidson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

Pending is defendant's motion for clarification of the court's March 17, 2000 opinion, which directed the United States to produce certain non-privileged documents to plaintiff First Heights.[1] *See First Heights Bank, FSB v. United States,* 46 Fed.Cl. 312 (2000). First Heights' September 24, 1999 motion to compel outlined four categories of documents sought, and the court has adopted the parties' labels of Categories 1–4 to describe these documents. Defendant asserted deliberative process privilege for all of the documents in Categories 3 and 4, and for some of these documents it also asserted work product privilege, attorney-client privilege, and a statutory privilege based on IRC Section 6103.

Both First Heights and defendant inadvertently omitted certain of the government's privilege claims for Categories 3 and 4 in the exhibits that were submitted to the court in connection with First Heights' motion to compel, and so the court's March 17 opinion did not address these claims. The court permitted supplemental briefing relating to

---

1. Because these documents were the subject of a joint motion to compel, defendant has also produced them to the plaintiffs in *First Nationwide, Coast-to-Coast, Local America,* and *Centex.* For further discussion of the factual background in *First Heights* and these other *Winstar*-related cases, see *Coast-to-Coast Financial Corp. v. United States,* 45 Fed.Cl. 796 (2000) and *First Heights Bank, FSB v. United States,* 46 Fed.Cl. 312 (2000).

the legitimacy of these claims, and argument was heard on May 31, 2000. Defendant's motion for clarification is granted in part and denied in part, as set out below.

## DISCUSSION

*Work Product Privilege Claims*

■ Defendant asserts the work product privilege for 18 additional documents in Categories 3 and 4. The court upheld defendant's earlier work product claims, finding that the documents were prepared in anticipation of litigation, and that defendant had provided sufficient information to justify its privilege assertions. *See First Heights*, 46 Fed.Cl. at 320, 325. First Heights objects to the work product claims raised in defendant's motion for clarification. It argues that, because the court's earlier opinion held that plaintiff had demonstrated sufficient need to overcome defendant's deliberative process assertions, consistency dictates a finding that it has also shown sufficient need to overcome defendant's work product assertions. We disagree.

Although the work product privilege is a qualified privilege that may be overcome with a showing of "substantial need," *see* RCFC 26(b)(2), the considerations for evaluating need in relation to the deliberative process privilege and the work product privilege are not identical. The protections of the work product privilege, and the standards used to determine whether the party seeking discovery can overcome the privilege, have been codified in the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims. *See* FRCP 26(b)(3); RCFC 26(b)(2). The deliberative process privilege, on the other hand, is a court-created privilege, and the standards for evaluating whether the privilege can be overcome derive from case law. The deliberative process test involves simply "a showing of evidentiary need weighed against the harm that may result from disclosure." *See Abramson v. United States*, 39 Fed.Cl. 290, 295 (1997) (quoting *CACI Field Servs. v. United States*, 12 Cl.Ct. 680, 687 (1987), *aff'd* 854 F.2d 464 (Fed.Cir. 1988)).

The work product privilege, in contrast, requires a two-tiered approach. Material prepared in anticipation of trial may be obtained after a showing of substantial need and the inability to obtain substantially equivalent materials without undue hardship. *See* RCFC 26(b)(2). Even after this showing is made, however, the court is required to take extra care to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *See id.* Material in this latter category, which includes the Category 3 and 4 documents for which defendant asserts the privilege here, is "nearly absolutely" protected and "can be discovered only in very rare and extraordinary circumstances." *See In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977); *see also Deuterium Corp. v. United States*, 19 Cl.Ct. 697, 700 (1990) (noting that work product revealing attorneys' mental processes receives special protection, and that a stronger showing than "substantial need" is required to obtain such materials) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400–01, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

First Heights raised several objections to defendant's original assertion of deliberative process privilege, and although the court did not find it necessary to fully evaluate these arguments in its March 17 decision, there is significant doubt as to whether the deliberative process privilege would apply to the documents at issue in Categories 3 and 4. Similar doubts do not apply to defendant's work product assertions. Furthermore, the need for the deliberative process privilege is less acute, where, as here, the privilege relates to events that took place over a decade ago and involved federal agencies which no longer exist and which had commercial rather than national security functions. Indeed, the court noted in its March 17 opinion that the government had not "articulated any specific or significant harm" that would result from overriding its deliberative process assertions. *See First Heights*, 46 Fed.Cl. at 322. Numerous courts have noted that the deliberative process privilege should be construed narrowly in order to permit parties seeking discovery to obtain sufficient information. *See, e.g., Coastal States Gas Corp. v.*

*Dept. of Energy,* 617 F.2d 854, 868 (D.C.Cir. 1980) (the privilege should be applied "as narrowly as [is] consistent with efficient government operation"); *Resident Advisory Board v. Rizzo,* 97 F.R.D. 749, 752 (E.D.Pa. 1983) (because benefits of the deliberative process privilege are at best indirect and speculative, it "must be strictly confined within the narrowest possible limits consistent with the logic of its principles."); *Exxon Corp. v. DOE,* 91 F.R.D. 26, 43 (N.D.Tex. 1981) (deliberative process privilege is to be applied "as narrowly as possible, consistent with efficient administrative operations"). Courts have not registered similar caveats concerning the application of the work product privilege, because the work product privilege is critical to ensuring that lawyers are able to provide, at the first expectation of litigation, "full, fair and frank counsel to potential clients." *See Deuterium Corp.,* 19 Cl.Ct. at 701. For these reasons, the court concludes that First Heights' showing of need is insufficient to overcome defendant's work product assertions for the Category 3 and 4 documents at issue. Accordingly, the work product assertions for the documents listed in Exhibit A of defendant's April 11, 2000 motion for leave to file corrected exhibits are upheld.

*Attorney–Client Privilege*

■ Defendant asserts the attorney-client privilege for 42 additional documents in Categories 3 and 4. In connection with the briefing on defendant's pending motion for clarification, defendant submitted these documents for *in camera* review by the court. The parties' dispute centers on whether defendant waived privilege for these documents by submitting advice from its outside counsel, Thacher, Proffitt, & Wood, in a memo ("TPW memo") attached to the Treasury Department's September 18, 1990 report to Congress. The court earlier held that the submission of the TPW memo, along with an earlier exhibit also prepared by Thacher, Proffitt, & Wood, constituted a waiver of attorney-client privilege for those documents that dealt with the same subject matter and that were prepared prior to September 18,

1990. *See First Heights,* 46 Fed.Cl. at 319–20. The court made clear that the waiver would not extend to documents created after the date that the TPW memo was disclosed to Congress, on the rationale that the doctrine of subject matter waiver did not contemplate a continuing waiver extending indefinitely into the future. *See id.* at 320. First Heights appears to concede that the waiver does not apply to the 16 documents submitted by defendant that are dated after September 18, 1990. The parties disagree on the proper disposition of defendant's privilege claims for the remaining 26 documents.

Defendant argues that the waiver should not apply to any of the documents at issue, because they were not prepared by or circulated to attorneys at Thacher, Proffitt, & Wood. This is not, however, an accurate reading of the court's earlier opinion on this issue. The court noted that the government would not be permitted to use the privilege as both a sword and a shield, and indicated that First Heights "'must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice—whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.'" *See First Heights,* 46 Fed. Cl. at 319–20 (quoting *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3rd Cir.1995)). Because the government publicly disclosed its attorneys' advice in order to bolster the position it was taking before Congress, First Heights must be allowed to evaluate the context of the analysis contained in the TPW memo. *See In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982); *Triax Co. v. United States,* 11 Cl.Ct. 130, 134 (1986). We therefore find that defendant has waived the attorney-client privilege for those documents that were prepared prior to September 18, 1990, and that deal specifically with the potential deductibility of covered asset losses and/or the treatment of Federal Savings and Loan Insurance Corporation ("FSLIC") financial assistance under IRC Section 597.[2] All of

2. Contrary to defendant's assertions, this conclusion is not inconsistent with the court's April 4, 2000 order. That order upheld defendant's at-

torney-client privilege claims for five Category 3 documents that were submitted for *in camera* review. Two of those documents were not with-

the documents submitted by defendant that are dated prior to September 18, 1990, fall within the scope of the waiver.

This holding thus disposes of defendant's privilege claims for the majority of the 26 documents listed in Exhibit B to First Heights' April 26, 2000 opposition to defendant's motion for clarification. The dates for ten of the documents were not initially identified in the government's privilege logs. Defendant, following oral argument, offered the court a supplemental filing providing additional information regarding the dates of these documents. Defendant indicated that four were dated prior to September 18, 1990, and that the remaining six were dated after September 18, 1990. First Heights objects to defendant's dates for the latter. First Heights argues that defendant has waived the right to provide date information for these documents by failing to include it in earlier privilege logs, or in the alternative, that defendant should be required to provide additional information to establish the dates of the documents.

Defendant provided its supplemental information after engaging in efforts to determine the dates of the undated documents at the direction of the court, and so First Heights' waiver argument is misplaced. Because defendant has access to the employees who were involved in the creation of the documents, it is also in the best position to provide the most accurate information possible concerning when the documents were created. Therefore, for purposes of construing the government's waiver, the court accepts the date information included in defendant's supplemental filing.

For the reasons outlined above, defendant is directed to produce to plaintiffs all of the documents listed in Exhibit B to First Heights' April 26, 2000 opposition to defendant's motion for clarification, with the exception, (a) of documents 18, 19, 20, 24, 25, and 26, which were created after September 18, 1990, and (b) of those documents that are also identified as protected by the work prod-

uct privilege in Exhibit A to defendant's April 11, 2000 motion for leave to file corrected exhibits. In addition, to the extent they are not covered in First Heights' Exhibit B referenced above, defendant is directed to produce documents 6(c), 16, 31, and 32 as identified in its June 1, 2000 notice of filing of date information.

*Internal Revenue Code (IRC) Section 6103*

Many of the Category 3 and 4 documents contain revenue estimates prepared by the Treasury officials in connection with the Treasury Department's efforts to evaluate the thrift acquisitions and estimate the financial impact of permitting acquirers to take deductions for covered asset losses. Defendant's motion for clarification seeks to assert a statutory privilege based on IRC Section 6103 (26 U.S.C. § 6103 (1994)) for material in 22 Category 3 and 4 documents listed in Exhibit C to defendant's April 11, 2000 motion for leave to file corrected exhibits. These are documents for which defendant originally asserted the Section 6103 privilege in response to the plaintiffs' joint motion to compel. The invocation of Section 6103 as to these documents was inadvertently overlooked in connection with the briefing on First Heights' September 24, 1999 motion to compel. Along with these 22 documents, defendant for the first time asserts the Section 6103 privilege for material contained in 99 additional Category 3 and 4 documents. Defendant had not asserted the Section 6103 privilege for these documents in any of its earlier privilege logs. It has provided copies of all of the documents referenced above to the plaintiffs, after redacting information it believes is covered under Section 6103.

Section 6103 prohibits disclosure of any "return" or "return information." Return information is defined in 6103(b)(2) as:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return

in the scope of the waiver because the court determined that their primary focus did not relate to the deductibility of covered asset losses or the tax treatment of FSLIC financial assistance

under IRC Section 597. The three remaining documents were not within the scope of the waiver because they were created after September 18, 1990.

was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, or other imposition or offense[.]

26 U.S.C. § 6103(b)(2)(A). According to defendant, the documents sought here contain return information relating to particular savings and loan institutions and savings and loan acquirers.

■ First Heights objects to defendant's assertion of the Section 6103 privilege for the 99 documents referenced above, arguing that the privilege was waived because of defendant's failure to assert it in earlier privilege logs. The government merely acts as a steward of the privilege, however. It is intended to protect the confidentiality of information that is in the possession of the IRS and that relates to specific taxpayers. Defendant's failure to raise the privilege earlier, while unfortunate, will not be construed as a waiver of protections mandated by Congress and designed for the benefit of taxpayers.

■ First Heights also objects to defendant's redactions, arguing that they are inconsistent with Section 6103 and with the court's earlier opinion. The majority of First Heights' concerns are misplaced. Redaction of revenue estimates that relate to or mention particular taxpayers is not improper. Section 6103(b)(2)(A) specifically defines return information to include "data, received by, recorded by, prepared by, furnished to, or collected by the Secretary ... with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title[.]" Revenue estimates fit within this definition to the extent that they identify particular amounts of revenue that could potentially be collected from particular taxpayers if changes in the tax laws were enacted.

The fact that the figures relate only to IRS estimates of hypothetical future deductions that taxpayers never actually had the opportunity to take is not material. The revenue estimates dealt with the potential tax liability of particular taxpayers if certain tax laws were left in place, and sought to project the tax effect of adjustments to these laws. Such information is covered by Section 6103, which prohibits disclosure of data "received by ... or prepared by ... the Secretary with respect to a return or with respect to the determination of the existence, *or possible existence,* of liability ... under this title[.]" *See* 26 U.S.C. § 6103(b)(2)(A) (emphasis added). Properly, however, defendant has not redacted aggregate numbers representing the total estimated revenue that could potentially be collected from taxpayers within a particular group.

■ As a separate argument, First Heights insists that the names of particular taxpayers, when referenced in certain internal IRS and Treasury memoranda discussing the thrift acquisitions, are not return information. First Heights focuses on inter-office requests from Treasury officials seeking information on specific companies for use in preparing revenue estimates relating to deductions for covered asset losses. It complains that, "Despite the fact that these preliminary requests by their very nature do not have revenue estimate information, all the names of the companies were redacted." *See* First Heights Plaintiffs' Opposition to Defendant's Motion for Clarification at 10–11. The plain language of Section 6103, however, requires such redactions. The definition of return information specifically includes a taxpayer's identity, and Section 6103(b)(6) defines "taxpayer identity" to include a taxpayer's name, mailing address, or taxpayer identifying number.

First Heights argues that permitting such redactions leads to an absurd interpretation of the statute, in that the IRS would be forbidden to reveal the names of IRS agents who could assist citizens with questions, on the grounds that giving out an agent's name would reveal his or her "taxpayer identity." First Heights cites *Solargistics Corp. v. United States,* 89–2 U.S.T.C. (CCH) ¶ 9610, 1989 WL 134505 (N.D.Ill.1989), but ignores the context of *Solargistics* and similar cases. In *Solargistics,* the court was confronted

with whether the IRS could include in letters to taxpayers the name of a corporation promoting tax shelters in which the taxpayer receiving the letter had invested. These letters were meant to warn the taxpayers that certain deductions suggested by the corporation promoting the tax shelters would not be permitted, and that the taxpayers should adjust their returns accordingly. *See Solargistics Corp.*, 98–2 U.S.T.C. (CCH) ¶ 9610. The corporation promoting the tax shelters sued the government, alleging that the IRS had improperly disclosed its taxpayer identity in violation of Section 6103. The court rejected the argument, finding that Section 6103(b)(2)(A) only prohibited revealing the corporation's identity in connection with its status as a taxpayer, and that the IRS letters in question had focused solely on the tax status of the recipient, as opposed to the corporation promoting the tax shelters.

The *Solargistics* court relied heavily on *Datamatic Services Corp. v. United States*, 88–1 U.S.T.C. (CCH) ¶ 9163, 1987 WL 28603 (N.D.Ca.1987), which includes a more detailed analysis:

> The statute [IRC Section 6103] does not define "taxpayer identity" merely as "the name of a person," but goes on to modify the latter phrase by the words "with respect to whom a return is filed." One reading of this modification would be that the IRS cannot disclose, for any purpose or in any context not covered by an exception, the name of anyone who files any sort of "return." This, of course, would mean just about everyone. Another, and in this Court's view, more sensible reading of the provision is that the modification [prohibits] disclosure of a person's name only when such disclosure pertains to the person's status as a taxpayer or his/her obligation to file a return.
>
> In this case, the reference to "Datamatic" pertained to neither DSC's status as a taxpayer nor its obligation to file any sort of return. Rather, the IRS used the name Datamatic merely to identify the promotion that had been examined. To the

extent this reference pertained to DSC as a separate entity at all, it did so in connection with DSC's status as a promoter, independent of any obligations DSC may have had as a taxpayer.

*Datamatic Services Corp.*, 88–1 U.S.T.C. ¶ 9163 (citation omitted). The distinction drawn in *Datamatic* has equal relevance here, because the corporate names sought by First Heights are used in connection with their status as taxpayers. For example, in document TGT001 2901, the redacted names are relevant to an inquiry concerning "loss generation from acquisition of old [savings and loans], and resultant [net operating loss] generation and use." Similarly, the redactions in document TGT001 2533 relate to "capital loss assistance payments," "capital loss utilization," "FSLIC tax sharing arrangements," and "whether the parent corporation has positive taxable income and can use the losses[.]" Clearly, the corporations are being identified in connection with their status as taxpayers. Their names must be redacted under Section 6103.

■ First Heights' final objection involves the redaction of return information that pertains directly to First Heights itself. First Heights argues that Section 6103 does not require redaction of return information regarding a particular taxpayer when that taxpayer is in fact the party seeking the information. Defendant responds that First Heights must provide a written release in order to obtain its own return information once that information is in the possession of the IRS.

In the context of discovery of documents containing its own return information, First Heights' numerous filings provide more than ample written authorization for defendant to release the information First Heights seeks.[3] First Heights first requested the return information contained in the revenue estimates when it joined in the plaintiffs' May 22, 1999 joint motion to compel. It reiterated this request in its own September 24, 1999 motion

---

**3.** Pursuant to a phone conference with the parties on June 14, 2000, the court understands that the parties are negotiating towards broader releases that would cover the release of Section 6103 information in other contexts, including use by both defendant and plaintiffs in depositions and trial preparation.

to compel, and again in its briefing in opposition to defendant's March 17, 2000 motion for clarification. Counsel for First Heights also restated this request explicitly, in the presence of a First Heights executive, during the May 31, 2000 hearing on defendant's motion for clarification. Under these circumstances, defendant has all the authorization it needs to provide exclusively to First Heights its own return information that has till now been redacted from the copies of the documents produced by the government. Accordingly, defendant is directed to produce new copies of these documents to First Heights, in which defendant may not redact any return information that relates specifically to First Heights or its corporate affiliates.

### CONCLUSION

Defendant's motion for clarification is granted in part and denied in part, as follows:

(1) Defendant's work product claims for the documents listed in Exhibit A to its April 11, 2000 motion for leave to file corrected exhibits are upheld. Defendant may retain any of these documents that it has not previously produced.

(2) Defendant is directed to produce to plaintiffs all of the documents listed in Exhibit B to First Heights' April 26, 2000 opposition to defendant's motion for clarification, with the exception of (a) those documents that are also listed as protected by the work product privilege in Exhibit A to defendant's April 11, 2000 motion for leave to file corrected exhibits, and (b) those documents that are identified in defendant's June 1, 2000 notice of filing of date information as being created after September 18, 1990.

(3) To the extent not covered by (2) above, defendant is directed to produce to plaintiffs documents 6(c), 16, 31, and 32 as identified in defendant's June 1, 2000 notice of filing.

(4) Defendant is directed to produce to First Heights new copies of any Category 3 and 4 documents that have been previously produced and from which

defendant redacted return information relating specifically to First Heights or its affiliates. Defendant shall not redact any of First Heights' return information on the new copies of the documents being produced.

(5) Defendant is directed to contact the court and make arrangements for retrieving all documents submitted for *in camera* review in connection with the discovery disputes in this case.